STATE of Wisconsin, Plaintiff-Respondent,

v.

Patty E. JORGENSEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–2690–CR. Oral argument February 18, 2003.—Decided July 11, 2003.*

2003 WI 105

(Also reported in 667 N.W.2d 318.)

160

For the defendant-appellant-petitioner there were briefs and oral argument by *Charles Bennett Vetzner*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Christopher G. Wren*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JON P. WILCOX, J. This is a review of an unpublished court of appeals decision, *State v. Jor-*

*gensen,* No. 01–2690–CR, unpublished slip op. (Wis. Ct. App. June 27, 2002),[1] in which the court of appeals affirmed a judgment of conviction and order denying a postconviction motion entered by the Dane County Circuit Court, Steven D. Ebert, Judge. The defendant, Patty Jorgensen, contends that the court of appeals erred in affirming her conviction for operating a motor vehicle while intoxicated, fourth offense, and the denial of her postconviction motion. She now seeks relief from this court on the ground that the sentencing guidelines established by the Fifth Judicial District for certain "operating while intoxicated" offenses under the authority of Wis. Stat. § 346.65(2m)(a), are unconstitutional. Jorgensen claims the circuit court violated her rights to due process and equal protection of the laws by relying upon the local guidelines authorized by § 346.65(2m)(a). She asserts the guidelines operate to increase disparity in sentencing based only on the geographic location of the offense. Jorgensen further claims that the guidelines relied upon by the court exceed the authority granted by the legislature in § 346.65(2m)(a) and that the guidelines, on their face, are inapplicable to her.

¶ 2. We hold that the sentencing guidelines established by the Fifth Judicial District are authorized by Wis. Stat. § 346.65(2m)(a). We further conclude that under the plain language of § 346.65(2m)(a), the sentencing guidelines apply only to Wis. Stat. § 346.63(1)(b), not Wis. Stat. § 346.63(1)(a), under

---

[1] Pursuant to Wis. Stat. § 752.31(2)(f) (1999–2000), this case was decided by one judge at the court of appeals, rather than a three judge panel.

All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

which Jorgensen was sentenced. However, because circuit courts have a great amount of sentencing discretion, we find that reference to the sentencing guidelines in a § 346.63(1)(a) case does not constitute error. That being the case, a defendant such as Jorgensen sentenced under § 346.63(1)(a) may potentially be sentenced by a court referring to the sentencing guidelines established for § 346.63(1)(b). Therefore, we must address Jorgensen's argument that these guidelines are unconstitutional. We agree with the court of appeals' conclusion that the sentencing guidelines are constitutional and, accordingly, we affirm.

## I. BACKGROUND

¶ 3. For purposes of this appeal, the following facts are not in dispute. In the early morning hours of May 21, 1999, a witness found Jorgensen in her vehicle in a ditch near his home and summoned police. Responding officers found Jorgensen asleep in the driver's seat of her vehicle. Jorgensen failed field sobriety tests administered by the police, and she was arrested for operating a vehicle while intoxicated. Subsequent blood testing showed that Jorgensen's blood alcohol content was .276.

¶ 4. Jorgensen was charged with violating Wis. Stat. § 346.63(1)(a) and Wis. Stat. § 346.63(1)(b).[2] She utilized her right to a jury trial. She stipulated to many

---

[2] Wisconsin Stat. § 346.63(1) provides, in pertinent part:

No person may drive or operate a motor vehicle while:

(a) Under the influence of an intoxicant, a controlled substance, a controlled substance analog or any combination of an intoxicant, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the

of the facts and the only issue remaining for jury determination was whether or not Jorgensen was the person operating the vehicle. At trial, Jorgensen claimed that another person was driving.

¶ 5. A jury found Jorgensen guilty of operating a vehicle while under the influence of an intoxicant (OWI) in violation of Wis. Stat. § 346.63(1)(a) and of operating a motor vehicle while having a prohibited blood alcohol concentration (PAC) in violation of Wis. Stat. § 346.63(1)(b), either of which would constitute her fourth "operating under the influence" offense.

¶ 6. Section 346.63(1)(c) of the Wisconsin Statutes provides that although a defendant may be charged and prosecuted for both OWI and PAC, violations of §§ 346.63(1)(a) and (b), respectively, a defendant may not be "convicted" and sentenced for both OWI and PAC if the charges arise out of the same incident or occurrence. Rather, "[i]f the person is found guilty of both pars. (a) and (b) for acts arising out of the same incident or occurrence, there shall be a single conviction for purposes of sentencing and for purposes of counting convictions under ss. 343.30(1q) and 343.305." Wis. Stat. § 346.63(1)(c). Jorgensen's judgment of conviction was entered on the OWI count, § 346.63(1)(a).

¶ 7. The sentencing guidelines at issue, the "Fifth Judicial District OWI Sentencing Guidelines," were established by the Chief Judge of the Fifth Judicial District under the authority granted by the legislature in Wis. Stat. § 346.65(2m)(a).[3] For a fourth offense such

combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving; or

(b) The person has a prohibited alcohol concentration.

[3] Wisconsin Stat. § 346.65(2m)(a) provides:

as the one here, the guidelines are provided in a table format and include factors to consider and corresponding sentencing recommendations. The horizontal headings on the table are: "BAC Levels," "Minimum Driving No Accident," and "Aggravated Driving Accident or Injury Bad Driving Record." The specific guideline relevant to sentencing in this case provided that for a fourth offense, a defendant with a blood alcohol content level of .20 or above faces periods of incarceration with ranges of 60 to 150 days and 90 days to one year, depending upon the court's determination of the specific circumstances surrounding the offense.

¶ 8. At sentencing on September 7, 2000, both the prosecutor and defense counsel made arguments based on these sentencing guidelines. Explicitly noting guideline factors, the State requested an eight- to nine-month sentence. Defense counsel did not dispute application of the guidelines at the time. Rather, Jorgensen's counsel noted the guideline provisions and argued that a three-month sentence was more appropriate under the circumstances. After hearing these arguments, the circuit court, explicitly referencing the sentencing guidelines, sentenced Jorgensen to seven months in jail.

---

In imposing a sentence under sub. (2) for a violation of s. 346.63(1)(b) or (5) or a local ordinance in conformity therewith, the court shall review the record and consider the aggravating and mitigating factors in the matter. If the level of the person's blood alcohol level is known, the court shall consider that level as a factor in sentencing. *The chief judge of each judicial administrative district shall adopt guidelines, under the chief judge's authority to adopt local rules under SCR 70.34, for the consideration of aggravating and mitigating factors.*

(Emphasis added.) We note that the defendant argues that the guidelines established by the Fifth Judicial District exceed the authority granted by this statute.

¶ 9. Jorgensen filed a motion for postconviction relief on several grounds, including the issue now before this court, whether the circuit court erroneously relied upon local sentencing guidelines because § 346.65(2m)(a), the authorizing statute, is unconstitutional. The circuit court denied the motion.

¶ 10. Jorgensen appealed from both the judgment of conviction and the order denying her motion for postconviction relief. She again claimed that the sentencing guidelines relied upon by the circuit court were unconstitutional.[4] The court of appeals affirmed the circuit court, holding that the circuit court did not violate Jorgensen's due process and equal protection rights by using the local sentencing guidelines. On October 21, 2002, this court accepted Jorgensen's petition for review.

## II. STANDARD OF REVIEW

¶ 11. The question before this court is whether the circuit court erred in using the Fifth Judicial District sentencing guidelines to sentence Jorgensen. We review the circuit court's exercise of discretion in sentencing Jorgensen. More specifically, we look at the legal bases for the circuit court's sentencing determination.

¶ 12. Sentencing falls within the discretionary authority of the circuit court. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971); *State v. Eckola,* 2001 WI App 295, ¶ 4, 249 Wis. 2d 276, 638 N.W.2d 903.

---

[4] Jorgensen also appealed the circuit court's ruling on the issue of ineffective assistance of counsel, but that issue has not been raised as part of this appeal and is, therefore, not addressed.

166

This court has held that it "will not interfere with the circuit court's sentencing decision unless the circuit court erroneously exercised its discretion." *State v. Lechner,* 217 Wis. 2d 392, 418–19, 576 N.W.2d 912 (1998); *see also Eckola,* 249 Wis. 2d 276, ¶ 4. The circuit court erroneously exercises its discretion if the exercise of discretion is based on an error of law. *State v. Davis,* 2001 WI 136, ¶ 28, 248 Wis. 2d 986, 637 N.W.2d 62; *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

¶ 13. In reviewing the circuit court's sentencing determination in this case, we must also interpret the provisions of § 346.65(2m)(a). Statutory interpretation is reviewed de novo. *Burg v. Cincinnati Cas. Ins. Co.,* 2002 WI 76, ¶ 15, 254 Wis. 2d 36, 645 N.W.2d 880. The first step in statutory interpretation is to look at language of the statute. *Id.,* ¶ 16.

¶ 14. If we find that the sentencing guidelines established by the Fifth Judicial District do not exceed the authority granted by the legislature in Wis. Stat. § 346.65(2m)(a), the analysis must focus on the constitutionality of that statute. The constitutionality of a statute is a question of law which this court reviews de novo. *State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989); *Employers Health Ins. Co. v. Tesmer,* 161 Wis. 2d 733, 737, 469 N.W.2d 203 (Ct. App. 1991). Statutes are presumed constitutional, and the party bringing the constitutional challenge bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *McManus,* 152 Wis. 2d at 129 (internal citation omitted); *Stanhope v. Brown County,* 90 Wis. 2d 823, 837, 280 N.W.2d 711 (1979); *State v. Hanson,* 182 Wis. 2d 481, 485, 513 N.W.2d 700 (Ct. App. 1994);

*Employers Health,* 161 Wis. 2d at 737. If there is no suspect classification or fundamental right involved, " 'it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination.' " *Tomczak v. Bailey,* 218 Wis. 2d 245, 264, 578 N.W.2d 166 (1998) (internal citation omitted); *McManus,* 152 Wis. 2d at 129 (" 'If the court can conceive any facts on which the legislation could reasonably be based, it must hold the legislation constitutional.' ") (quoting *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 506, 261 N.W.2d 434 (1978)); *see also Employers Health,* 161 Wis. 2d at 737–38 (" 'If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had [that] fact in mind [when it passed the act].' ") (internal citation omitted) (brackets in original).

### III. ANALYSIS

¶ 15. This case centers around the constitutionality of sentencing guidelines promulgated under the authority of Wis. Stat. § 346.65(2m)(a). Jorgensen argues that these guidelines violate her state and federal constitutional rights to due process and equal protection of the law because they increase sentencing disparity on the basis of the geographic location of the alleged offense. Jorgensen also raises two related preliminary issues. She argues that the guidelines established by the Fifth Judicial District exceed the authority granted through Wis. Stat. § 346.65(2m)(a) and that the guidelines, on their face, are not applicable to her case. We address these issues first. Because we conclude that the guidelines were authorized under § 346.65(2m)(a), that reference to the guidelines was not error, and that there

is a rational basis for the guidelines, we affirm the court of appeals' decision. Finally, Jorgensen asserts that even if we find the sentencing guidelines constitutional, we should utilize our supervisory powers to abrogate use of the guidelines. We decline to do so.

## A. Statutory Authority

¶ 16. Jorgensen argues that the sentencing guidelines established by the Fifth Judicial District exceed the authority granted by the legislature in § 346.65(2m)(a). She argues that the legislature did not mandate creation of guidelines with recommendations of specific sentences or sentencing ranges. She points to the language of § 346.65(2m)(a), which states, in pertinent part: "The chief judge of each judicial administrative district shall adopt guidelines . . . for the consideration of aggravating and mitigating factors." Jorgensen suggests that the legislature did not intend for the districts to go beyond creating a list of appropriate aggravating and mitigating factors for consideration.

¶ 17. The State, on the other hand, suggests that § 346.65(2m)(a) merely sets a minimum upon which the chief judges of various judicial districts have expounded by adding a link to an appropriate sentence. We agree with this perspective. We see nothing in the language that prohibits the districts from linking the aggravating and mitigating factors with an appropriate sentence within the broader range of sentences allowed under § 346.65. Section 346.65(2m)(a) mandates that chief judges set up guidelines based on their authority under SCR 70.34 (2000). This rule provides that "[e]ach chief

169

judge may adopt additional local rules not in conflict with the uniform judicial administrative rules." SCR 70.34. The legislature authorized and required chief judges to set up guidelines for consideration of aggravating and mitigating factors. As far as we can discern, there is nothing to prevent the chief judges from taking an extra step to link these factors with appropriate sentence ranges.

¶ 18. This court has found that "when the legislature has granted the sentencing court the authority to impose sentences within a certain range, the legislature has given the court discretion to determine where in that range a sentence should fall." *State v. Setagord*, 211 Wis. 2d 397, 418, 565 N.W.2d 506 (1997) (citation omitted). That is essentially what the chief judges have done here. They have created guidelines that match up appropriate sentences within the statutory ranges to aggravating and mitigating factors. We do not find this inappropriate.

B. Applicability of the Guidelines

¶ 19. The parties' briefs to this court raise the issue that Jorgensen was sentenced under Wis. Stat. § 346.63(1)(a), not Wis. Stat. § 346.63(1)(b). It appears that this issue was not raised before either the circuit court or the court of appeals. Instead, the record indicates that all parties appeared to rely upon the applicability of the guidelines until the appeal to this court. Jorgensen now attempts to use the argument to emphasize her point that application of these guidelines to her was inappropriate. Arguably, she has waived any complaint about the application of the wrong statute to her case. Nonetheless, we find it appropriate to discuss the issue because the State agrees that Jorgensen was

sentenced under the wrong section of the statute and asserts that the error deprives Jorgensen of standing to argue the unconstitutionality of the guidelines.

¶ 20. The State asserts that Jorgensen lacks standing to raise a constitutional challenge to the sentencing guidelines because the guidelines are inapplicable to the section under which she was sentenced. The State acknowledges that the judge relied upon the guidelines, but suggests that only a person sentenced under the relevant section mentioned in Wis. Stat. § 346.65(2m)(a)—Wis. Stat. § 346.63(1)(b)—has standing to make a constitutional challenge. The State argues that Jorgensen could, at best, claim that the court's reliance upon the guidelines was an erroneous exercise of discretion.

¶ 21. We do not agree with the State's argument on standing. In *Mast v. Olsen*, 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979), this court held: "A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action." We find that if the circuit court relied upon the local sentencing guidelines, then Jorgensen has arguably been injured and assuredly has a personal stake in whether or not the guidelines are constitutional.

¶ 22. One of the reasons for the rule of standing is that courts "should not adjudicate constitutional rights unnecessarily." *State v. Fisher*, 211 Wis. 2d 665, 668 n.2, 565 N.W.2d 565 (Ct. App. 1997) (quoting *Mast*, 89 Wis. 2d at 16). In *Schwittay v. Sheboygan Falls Mutual Insurance Co.*, 2001 WI App 140, ¶ 16 n.3, 246 Wis. 2d 385, 630 N.W.2d 772, the court of appeals found that requiring standing also "assures that [the court does] not decide a constitutional issue unless it is essential to

171

the determination of the case before [it]." Here, the State has conceded that it was not necessarily inappropriate for the circuit court to refer to the sentencing guidelines. Circuit courts are allowed wide discretion in sentencing. *See State v. McQuay,* 154 Wis. 2d 116, 129, 452 N.W.2d 377 (1990); *Anderson v. State,* 76 Wis. 2d 361, 363, 251 N.W.2d 768 (1977); *Eckola,* 249 Wis. 2d 276, ¶ 4. This court has found that the circuit courts are in the best position to consider the factors relevant to sentencing. *See Setagord,* 211 Wis. 2d at 418. We agree with the State that a circuit court's reference to the sentencing guidelines is not necessarily inappropriate, but we cannot agree that Jorgensen is deprived of standing on the constitutional issue because she was sentenced under Wis. Stat. § 346.63(1)(a).

¶ 23. Essentially, the issue of whether the circuit court erroneously exercised its discretion in this case may be determined by two considerations: (1) whether the judge actually relied upon the local guidelines in sentencing Jorgensen; and (2) if the judge relied upon the guidelines, whether it was error for the judge to do so.

¶ 24. The parties do not dispute the circuit court's reliance upon the sentencing guidelines.[5] We find the record indicates that the circuit court did, in fact, rely,

---

[5] Jorgensen argues, as she must, that the circuit court relied upon the guidelines. If the circuit court did not rely upon the guidelines for sentencing, Jorgensen would clearly lack standing to make a constitutional claim, because there would be no injury. *See Mast v. Olsen,* 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979); *Schwittay v. Sheboygan Falls Mutual Ins. Co.,* 2001 WI App 140, ¶ 16 n.3, 246 Wis. 2d 385, 630 N.W.2d 722. The State

at least to some extent, upon the Fifth Judicial District guidelines in sentencing Jorgensen. As noted, both parties made their sentencing arguments based on the guidelines. The circuit court then followed suit, noting at the outset of its sentencing determination that "everybody apparently has the guidelines in front of them, so we all know what the Fifth Judicial District does consider as being an appropriate range of sentencing penalties for this type of an offense." The court then went on to note that Jorgensen's blood alcohol level meant that the relevant section was the highest level in the guideline table. As noted by the circuit court in its postconviction order, however, it did consider other relevant factors in addition to the range of penalties set out by the guidelines, including blood alcohol level, prior convictions for operating under the influence, and the fact that there was an accident. The circuit court indicated that its sentence was based upon the appropriate factors laid out by this court in *McCleary*: the gravity of the offense, the character of the offender, and protection of the public. *See McCleary*, 49 Wis. 2d at 276; *State v. Harris*, 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984) (noting the *McCleary* "primary" factors and listing other additional factors).

¶ 25. Our second consideration is whether reliance upon the guidelines was inappropriate under the

argues that Jorgensen does not have standing, but on the basis that the circuit court sentenced Jorgensen under the wrong statute, not on the basis that the circuit court did not rely on the guidelines.

Apparently, the parties disputed reliance at the court of appeals level, and the court of appeals did not make a determination regarding whether the circuit court relied upon the guidelines. Rather, the court of appeals stated that it would assume the circuit court relied upon the guidelines in order to reach the constitutional issue.

relevant statutes. We have established that the circuit court relied, at least to some degree, upon the provisions of the guidelines. Section 346.65(2m)(a) of the Wisconsin Statutes authorized the creation of sentencing guidelines for certain offenses. That section provides, in its entirety:

> *In imposing a sentence under sub. (2) for a violation of s. 346.63(1)(b) or (5) or a local ordinance in conformity therewith,* the court shall review the record and consider the aggravating and mitigating factors in the matter. If the level of the person's blood alcohol level is known, the court shall consider that level as a factor in sentencing. The chief judge of each judicial administrative district shall adopt guidelines, under the chief judge's authority to adopt local rules under SCR 70.34, for the consideration of aggravating and mitigating factors.

Wis. Stat. § 346.65(2m)(a) (emphasis added). The plain language of the statute makes clear that the sentencing guidelines are only applicable to convictions under Wis. Stat. § 346.63(1)(b) or Wis. Stat. § 346.63(5).

¶ 26. The record here shows that Jorgensen was not sentenced under either § 346.63(1)(b) or Wis. Stat. § 346.64(5). She was sentenced under § 346.63(1)(a). Neither party has disputed that issue and, in fact, both relied upon it in making their arguments to this court. It is true that Jorgensen was charged with and found guilty by a jury of violating both §§ 346.63(1)(a) and (1)(b). Nevertheless, under the provisions of Wis. Stat. § 346.63(1)(c), Jorgensen could only be convicted and sentenced under one of these subsections. The circuit court sentenced her under § 346.63(1)(a).

¶ 27. Since the legislature specified that guidelines were to be established for use in sentencing under

§ 346.63(1)(b), not § 346.63(1)(a), circuit courts should not apply the guidelines by rote to (1)(a) convictions.[6] We agree that in exercising its broad discretion in the area of sentencing, a court may refer to the sentencing guidelines for PAC offenses in sentencing a defendant convicted of OWI. These violations are similar and one cannot argue that the factors relevant to one offense are not a relevant consideration in sentencing for the other. As this court has noted: "Wisconsin has a strong public policy that the sentencing court be provided with all relevant information." *State v. Guzman,* 166 Wis. 2d 577, 592, 480 N.W.2d 446 (1992). Although this policy typically comes up in the context of information about the defendant, we believe it applies with equal force to relevant law. Thus, it is not error for a circuit court to refer to the guidelines authorized under § 346.65(2m)(a) when sentencing a defendant under § 346.63(1)(a). However, because the legislature has specifically delineated the offense to which the guidelines apply, it is inappropriate for a circuit court to simply apply the guidelines as the sole basis for its sentence in a § 346.63(1)(a) case.[7]

---

[6] In addition, we note that these are discretionary, not mandatory, guidelines. *State v. Smart,* 2002 WI App 240, ¶ 15, 257 Wis. 2d 713, 652 N.W.2d 429 ("The guidelines are not mandatory, and a court may disregard them if it so chooses."). Thus, even if sentencing a defendant under Wis. Stat. § 346.63(1)(b), a circuit court may decide to disregard the sentencing guidelines.

[7] We note that this circuit court's error may not be unique. In the appendix to her brief to this court, Jorgensen included copies of the related sentencing guidelines from Eighth, Fourth, and Fifth Judicial Districts. All of these guidelines are entitled "OWI Sentencing Guidelines." This is somewhat of a misnomer that we suggest should be clarified. Wisconsin Stat. § 346.63

## C. Equal Protection and Due Process

¶ 28. We have found that the sentencing guide-
lines do not exceed the authority granted by the legis-
lature in § 346.65(2m)(a) and that a circuit court may
refer to the guidelines as a relevant factor in sentencing
under § 346.63(1)(a). These findings leave us with the
issue of whether § 346.65(2m)(a) itself violates
Jorgensen's constitutional rights to due process and
equal protection of the laws under both the state and
federal constitutions.[8] "This court has held the due
process and equal protection clauses of the Wisconsin

deals with many "operating under the influence" offenses.
Violations of subsection (1)(a) of that statute are often referred
to as "OWI" offenses. Subsection (1)(b), as clarified in this case,
refers to violations for operating a vehicle while having a
prohibited blood alcohol concentration, sometimes known as
"PAC" violations. Titling the guidelines "OWI Sentencing Guide-
lines" suggests that the guidelines refer to *all* the offenses under
§ 346.63 and none of the guidelines appear to include an
explanation that the guidelines only apply to Wis. Stat.
§§ 346.63(1)(b) and (5). Courts could even interpret the guide-
lines to apply only to offenses under Wis. Stat. § 346.63(1)(a)—
so-called OWI offenses. This opinion is intended to clarify that
these interpretations are incorrect. The guidelines only apply to
sentencing for convictions under §§ 346.63(1)(b) and (5), al-
though we acknowledge that a court may refer to the guidelines
as a relevant factor in sentencing under Wis. Stat.
§ 346.63(1)(a).

[8] Article XIV, Section 1, of the United States Constitution
provides, in pertinent part:

> No State shall ... deprive any person of life, liberty, or property,
> without due process of law; nor deny to any person within its
> jurisdiction the equal protection of the laws.

Article I, Section 1 of the Wisconsin Constitution provides,
in pertinent part:

Constitution are the substantial equivalents of their respective clauses in the federal constitution." *McManus,* 152 Wis. 2d at 130; *see also Joseph E.G. v. State,* 2001 WI App 29, ¶ 5 n.4, 240 Wis. 2d 481, 623 N.W.2d 137 (2000).

¶ 29. Jorgensen argues that the sentencing guidelines violate her constitutional rights because the various judicial districts have different guidelines and thus, defendants may receive different sentences based on where the crime was committed. Jorgensen asserts that the location of an offense within a particular district is not a legitimate sentencing factor. Jorgensen asserts that the guidelines are not entitled to a presumption of constitutionality because § 346.65(2m)(a) did not authorize the type of guidelines promulgated by the Fifth Judicial District. In contrast, the State argues that because there is a rational basis for the sentencing guidelines—that being a reduction in sentencing disparity within judicial districts—the guidelines are constitutional.

¶ 30. We agree with the analysis employed by the court of appeals in this case and in the case of *State v. Smart,* 2002 WI App 240, 257 Wis. 2d 713, 652 N.W.2d 429, a nearly identical case. In both cases, the constitutionality of the guidelines was upheld.

¶ 31. Jorgensen does not argue that there is any suspect class or fundamental right involved here and appears to agree, as she did at the court of appeals, that a rational basis test is appropriate. *See Jorgensen,* No. 01–2690–CR, unpublished slip op. at ¶ 30. The United States Supreme Court, in *Chapman v. United States,*

---

All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness . . . .

500 U.S. 453, 464–65 (1991), supports such an interpretation of the claims here. *Chapman* held that a fundamental right is not involved in this context and that a rational basis test is appropriate:

> They [the defendants] argue preliminarily that the right to be free from deprivations of liberty as a result of arbitrary sentences is fundamental, and therefore the statutory provision at issue may be upheld only if the Government has a compelling interest in the classification in question. But we have never subjected the criminal process to this sort of truncated analysis, and we decline to do so now. Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. In this context, . . . an argument based on equal protection essentially duplicates an argument based on due process.

*Chapman*, 500 U.S. at 464–65 (emphasis in original) (internal citations omitted). This view was adopted by the court of appeals in *Smart*, 257 Wis. 2d 713, ¶ 5.

¶ 32. As indicated by *Chapman*, the analyses of the due process claims and equal protection claims are largely the same. *Chapman*, 500 U.S. at 464–65. The court of appeals has laid out the test for both. In *Joseph E.G.*, 240 Wis. 2d 481, ¶ 8, the court of appeals held:

> When considering an equal protection challenge that does not involve a suspect or quasi-suspect classifica-

178

tion, "the fundamental determination to be made . . . is whether there is an arbitrary discrimination in the statute . . . , and thus whether there is a rational basis which justifies a difference in rights afforded."

(internal citations omitted); *see also McManus,* 152 Wis. 2d at 130–31. So long as a statute creating a classification is "rationally related to a valid legislative objective," it does not violate the constitutional right to equal protection. *Id.*

¶ 33. Similarly, the court of appeals has held that substantive due process serves to "protect[] people from state conduct that 'shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.'" *Smart,* 257 Wis. 2d 713, ¶ 11 (quoting *Joseph E.G.,* 240 Wis. 2d 481, ¶ 13). The court there found that unless a fundamental right is implicated, "a statute will generally survive a substantial due process challenge if it is rationally related to a legitimate government interest." *Id.* (citing *McManus,* 152 Wis. 2d at 131).

¶ 34. We disagree with Jorgensen's argument that the statute is not entitled to a presumption of constitutionality. We have already found that the sentencing guidelines do not exceed the authority granted in § 346.65(2m)(a). Thus, the issue becomes the constitutionality of the statute itself. It has been well-settled that statutes are presumed constitutional and a party challenging the constitutionality of a statute must prove the statute unconstitutional beyond a reasonable doubt. *See Stanhope,* 90 Wis. 2d at 837 ("We begin with the principle repeatedly stated by this court and the United States Supreme Court that all legislative acts are presumed constitutional . . . ."); *see also Milwaukee Brewers Baseball Club v. DHSS,* 130 Wis. 2d 79, 98–99, 387 N.W.2d 254 (1986). Consequently, we will apply a

179

presumption of constitutionality in our examination of Wis. Stat. § 346.65(2m)(a) and the guidelines promulgated thereunder.

¶ 35. Jorgensen asserts, as did the defendant in *Smart,* that this court's decision in *Nankin v. Village of Shorewood,* 2001 WI 92, 245 Wis. 2d 86, 630 N.W.2d 141, and the United States Supreme Court decision in *Bush v. Gore,* 531 U.S. 98 (2000), support her argument that the guidelines are unconstitutional. Like the court of appeals in both this case and *Smart,* we disagree.

¶ 36. In the *Nankin* case, this court held unconstitutional a tax statute that applied differently to residents in counties with larger populations. *Nankin,* 245 Wis. 2d 86, ¶ 46. As noted by the court of appeals in *Smart,* 257 Wis. 2d 713, ¶ 9, the *Nankin* case is distinguishable. Unlike the statute in *Nankin,* which merely created a disparity based on population where none existed before, the statute here is remedial and serves the purpose of reducing disparity. *See Smart,* 257 Wis. 2d 713, ¶ 9.

¶ 37. The United States Supreme Court decision in *Bush* is also distinguishable, as noted by the court of appeals in *Smart,* 257 Wis. 2d 713, ¶ 10. In *Bush,* 531 U.S. at 110, the United States Supreme Court prevented a recount of presidential ballots on the basis that different standards would be used across the state. Further, as the *Smart* court pointed out, the Supreme Court arguably applied a higher level of scrutiny since "the right to vote for president of the United States, once conferred by a state, is a fundamental right." *Smart,* 257 Wis. 2d 713, ¶ 10.

¶ 38. Jorgensen argues that the guidelines increase disparity, but as noted by the court of appeals, she has provided no evidence of such an effect. Instead, she asserts that the court of appeals in *Smart* concedes

the point, with its acknowledgement that the statute "creates different classes of people" that might be subject to different standards. *See Smart,* 257 Wis. 2d 713, ¶ 6. We disagree with this assertion. In fact, as this court has recognized: "Equal protection does not deny a state the power to treat persons within its jurisdiction differently; rather the state retains broad discretion to create classifications so long as the classifications have a reasonable basis." *McManus,* 152 Wis. 2d at 131.

¶ 39. We agree that having different guidelines in the various judicial districts may lead to some disparity. It is not a perfect solution to the sentencing disparity problem. However, under a rational basis test, it need not be a perfect solution. It must only be a step in the right direction. As noted by the court of appeals in *Smart,* 257 Wis. 2d 713, ¶ 7:

> Smart argues the guideline scheme does not bear a rational relationship to the objective of reducing disparity and actually increases it by allowing each judicial district to develop their own standards. While we agree the statute may not be the best way to reduce drunk driving sentencing disparity, a rational basis inquiry does not require perfection. Our only question is whether the statute bears some relationship to advancing that goal. It does. By mandating the creation of guidelines within judicial districts, the statute attempts to reduce sentencing disparity within those districts. While statewide guidelines would perhaps be more equitable, there is no requirement the legislature choose the wisest or most effective means of reducing disparity.

In addition, this court has held: "The fact a statutory classification results in some inequity . . . does not provide sufficient grounds for invalidating a legislative enactment." *McManus,* 152 Wis. 2d at 131.

¶ 40. Jorgensen does not challenge sentencing guidelines as a whole. As this court acknowledged in *State v. Speer,* 176 Wis. 2d 1101, 1124, 501 N.W.2d 429 (1993), sentencing guidelines that allow "the exercise of judicial discretion while reducing variance by providing guideline sentences for similar offenders who commit similar offenses," are valid. (Citation omitted.) We disagree with Jorgensen that the sentencing guidelines established under Wis. Stat. § 346.65(2m)(a) do not fit that mold. We agree with the court of appeals' statement in *Smart* that statewide guidelines might be better, but that acknowledgement is not the equivalent of a determination that district-by-district guidelines increase disparity. *Smart,* 257 Wis. 2d 713, ¶ 7. Rather, we are persuaded, as was the court of appeals in both *Smart* and this case, that the district-by-district sentencing guidelines at issue here in fact operate to reduce disparity within the judicial administrative districts. *See Smart,* 257 Wis. 2d 713, ¶ 9. Such guidelines do not completely eliminate the evil of sentencing disparity, but as the court of appeals in this case pointed out, "[T]he proper comparison is between having no guidelines and having district-by-district guidelines." *Jorgensen,* No. 01–2690–CR, unpublished slip op. at ¶ 29. That comparison makes clear that having some guidelines within districts are better than none at all. As the State points out in its brief, Jorgensen here appears to argue for the position that district-by-district guidelines violate equal protection and due process, but a system without guidelines does not. (Resp't Br. at 12) Such a position is illogical and we reject it. Instead, we accept that these guidelines fulfill the rational basis test by reducing sentencing disparity within judicial districts.

¶ 41. Accordingly, we affirm the court of appeals' determination that the Fifth District Sentencing guidelines authorized by Wis. Stat. § 346.65(2m)(a) are constitutional.

D. Supervisory Powers

¶ 42. In a final argument, Jorgensen suggests that even if this court finds the guidelines constitutional—which we do—this court should still invalidate the guidelines exercising its supervisory powers over the state courts. We decline this invitation. In finding these guidelines constitutional, we have determined that although such guidelines do not eliminate all disparity, they were authorized and set up for the purpose of, and succeed in eliminating some of the disparity that has existed within the state judicial districts. As such, we will not impede the authority granted to chief judges of the circuit courts or the discretion of the circuit courts themselves in sentencing.

¶ 43. This court has declared on previous occasions an unwillingness to intrude unnecessarily upon the discretion of circuit courts in the realm of sentencing. *See In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 200–202, 353 N.W.2d 793 (1984). In *Felony Sentencing,* 120 Wis. 2d at 202–03, this court declined the legislature's request to promulgate felony sentencing guidelines. Here, Jorgensen asks this court to overrule a scheme set up by the legislature and implemented by the various districts of the state, specifically here, the Fifth Judicial District. We decline to do so for many of the same reasons discussed in *Felony Sentencing. Id.* We held in *Felony Sentencing,* 120 Wis. 2d at 203, that "[i]t is for the legislature . . . to decide whether and to

183

what extent the sentencing court's discretion should be limited." The legislature here has, via Wis. Stat. § 346.65(2m)(a), mandated districts to establish sentencing guidelines related to certain "operating under the influence" offenses. The various districts have followed this mandate and established guidelines for consideration of aggravating and mitigating factors. This court will not obstruct operation of this sentencing scheme.

### IV. CONCLUSION

¶ 44. For the foregoing reasons, we affirm the decision of the court of appeals and find that the sentencing guidelines established by the Fifth Judicial District do not violate Jorgensen's equal protection or due process rights.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 45. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I conclude that Wis. Stat. § 346.65(2m)(a) is unconstitutional. The statute increases sentencing disparity for drunk driving offenses across the 10 judicial administrative districts of the state, and no rational basis exists for the legislature to treat offenders differently based upon the judicial district in which the offense was committed. Moreover, the legislature's delegation of authority to the chief judges of each judicial district to create OWI sentencing guidelines may violate the separation of powers doctrine.

### I

¶ 46. Wisconsin Stat. § 346.65(2m)(a) directs the chief judge of "*each* judicial administrative district" to "adopt guidelines for the consideration of aggravating

and mitigating factors" under the chief judge's authority to "adopt *local* rules under SCR 70.34."[1] The legislature gives no direction that the guidelines be consistent across judicial districts or even that all judicial districts consider the same aggravating and mitigating factors.

¶ 47. Thus, the statute, on its face, envisions a sentencing guidelines scheme that varies from judicial district to judicial district. It creates a system in which sentences vary not because of any characteristic of the offender or the offense, but because of the geographic location in which the offense took place. As the court of appeals has noted, "the statute creates different classes of people. It makes persons convicted of driving while under the influence in one judicial district subject to potentially different sentencing standards from those in other districts."[2]

¶ 48. The majority opinion understates the sentencing disparity created by Wis. Stat. § 346.65(2m)(a) when it admits that "having different guidelines in the various judicial districts may lead to some disparity."[3] The disparity in sentences between judicial districts as a result of § 346.65(2m)(a) is dramatic.[4] In *State v.*

---

[1] Wis. Stat. § 346.65(2m)(a) (emphasis added). SCR 70.34 provides: "The director of state courts shall develop uniform rules for trial court administration. Each chief judge may adopt additional local rules not in conflict with the uniform judicial administrative rules." No one argues that the guidelines are not local judicial administrative rules under 70.34, but it seems arguable that they are not.

[2] *State v. Smart,* 2002 WI App 240, ¶ 6, 257 Wis. 2d 713, 652 N.W.2d 429.

[3] Majority op., ¶ 39.

[4] Indeed, it is arguable that the multiple guidelines create huge disparity where none existed before. A Judicial Conference

185

*Smart*, 2002 WI App 240, ¶ 4, 257 Wis. 2d 713, 652 N.W.2d 429, the court of appeals explained that the maximum sentence for a defendant's third offense OWI conviction ranged from 45 days to 120 days, depending on the judicial district.[5]

¶ 49. The range of possible sentences across judicial districts for a defendant convicted of fourth offense OWI, like the defendant in the present case, is no less startling. One need only look at the guidelines created by the three districts I have attached hereto to see the disparity. These guidelines were presented by and discussed by the parties in this case.

¶ 50. In the Eighth Judicial District a person's fourth offense aggravated OWI conviction (with a blood alcohol level of .276 and resulting "accident") is subject to a flat 150–day sentence.[6] The district guidelines provide no direction for a sentencing judge to consider additional aggravating or mitigating factors.

¶ 51. In the Fourth Judicial District, a person's fourth offense aggravated OWI conviction (with a .276 blood alcohol level and resulting "accident") is subject to a flat sentence of 105 days in jail, though the guidelines

committee concluded in a 1983 report that there was no unjustified disparity in sentencing in Wisconsin courts. *Matter of Implementation of Felony Sentencing Guidelines*, 113 Wis. 2d 689, 693, 335 N.W.2d 868 (1983).

[5] *Smart*, 257 Wis. 2d 713, ¶ 4:

[T]he ninth district's jail time guideline for [the defendant's] offense is 120 days, except between January 2001 and August 2001, when it was ten months. Had he been convicted of the same crime in other judicial districts, [the defendant] would have likely received a much shorter jail term. In the tenth district, the guideline is 110 days; in the eighth, seventy-five days; and in the fourth, forty-five days.

[6] The defendant would also face a $1654.00 fine and have his or her license revoked for 36 months.

permit a court to consider as "mitigating factors" the defendant's ability to pay and conduct since the offense, the consequences to the defendant and victim, and whether there was cooperation by the defendant.

¶ 52. In the Fifth Judicial District (where the defendant was convicted), according to guidelines, the same person faces a possible sentence ranging from 90 days to one year. Despite the guidelines proposing this wide range, the Fifth Judicial District guidelines give no directions to the circuit court in deciding where to place a given defendant within this broad range.

¶ 53. The truth of the matter is that Wis. Stat. § 346.65(2m)(a) has, by design, created the potential for significant disparity in sentencing similarly situated offenders under similar circumstances who are similar threats to the public based solely upon geography, and the disparity from district to district and across the state has come to pass.

II

¶ 54. The majority opinion concludes that the legislature's decision to create disparate sentencing guidelines from judicial administrative district to judicial administrative district survives constitutional scrutiny by reframing the issue and focusing exclusively on the decreased disparity within each judicial district. The majority opinion contends that the disparity created by Wis. Stat. § 346.65(2m)(a) is constitutional because a rational basis for the disparity among judicial districts can be conceived, namely that the guidelines

187

adopted under § 346.65(2m)(a) operate to reduce sentencing disparity within judicial districts.[7]

¶ 55. The purpose of the law at issue is to eliminate disparity in sentences. The objective of decreasing disparity is to ensure to the extent possible that similarly situated offenders will be sentenced similarly. Thus the imposition of a criminal sentence must be based on "the gravity of the offense, the character of the offender and the need for the protection of the public."[8] "Sentencing disparities that are not justified by differences among offenses or offenders are unfair both to offenders and to the public. A sentence that is unjustifiably high compared to sentences for similarly situated offenders is clearly unfair to the offender; a sentence that is unjustifiably low is just as plainly unfair to the public."[9]

¶ 56. Sentencing guidelines are "designed to allow the exercise of judicial discretion to consider the offense, the offender and the public while reducing variance by providing guideline sentences for similar offenders who commit similar offenses."[10] Sentencing guidelines do not achieve this goal when offenders who commit similar offenses under similar circumstances and present similar dangers to the public are not sentenced similarly.

---

[7] Majority op., ¶ 40 ("we accept that these guidelines fulfill the rational basis test by reducing sentencing disparity within judicial districts").

[8] *State v. Ogden,* 199 Wis. 2d 566, 571, 544 N.W.2d 574 (1996) (citations omitted).

[9] *United States v. Chapman,* 500 U.S. 453, 473 n.10 (1991) (citing S. Rep. No. 98–225, at 45–46 (1983); 1984 U.S.C.C.A.N. (98 Stat.) 3228–29.).

[10] *State v. Speer,* 176 Wis. 2d 1101, 1124, 501 N.W.2d 429 (1993)

¶ 57. The question in this case is whether there is a rational basis for establishing a sentencing guideline system that treats criminal offenders in one judicial district different from similar offenders in a different judicial district. More specifically, the question is: How is authorizing different guidelines in each administrative district germane to the purpose of reducing disparity? "The classification adopted must be germane to the purpose of the law."[11] The majority opinion concludes that reducing disparity within the general geographical locus of the offense has a rational relation to reducing disparity in sentencing in the state even though sentencing disparity is increased within the state as a whole.

¶ 58. The majority opinion's "rational basis" is, in fact, irrational. It begs the question to conclude that the statute has a rational basis of reducing disparate sentencing in the State by reducing disparity within each judicial district. The issue of disparate sentencing is not about disparate treatment of similar offenders within different parts of the state but about disparate treatment of similar offenders across the state. The majority opinion never explains why the judicial district classification is germane to the purpose of eliminating disparity in sentencing.[12]

---

[11] *Nankin v. Village of Shorewood,* 2001 WI 92, ¶ 39, 245 Wis. 2d 86, 630 N.W.2d 141 (quoting *Aicher v. Wis. Patients Comp. Fund,* 2000 WI 98, ¶ 58, 237 Wis. 2d 99, 613 N.W.2d 849).

[12] I am also attaching a map showing the judicial administrative districts. The map shows that while these districts might make sense for purposes of trial court administration they do not necessarily make sense for purposes of differences in OWI sentencing.

¶ 59. The geographical unit in which to determine disparity in sentencing for similar offenders is the state as a whole. The offenders have violated a state criminal statute describing an offense against the people of the State of Wisconsin, not an offense merely against the people of a particular county or administrative district. Yet the statute mandates a guideline system in which offenders who have similar characteristics are sentenced to the same state institutions but for different time periods, with the determinative issue not the characteristics of the offender and offense but geography (the administrative district in which the offense occurred).[13]

¶ 60. Although the majority opinion dismisses *Nankin v. Village of Shorewood,* 2001 WI 92, 245 Wis. 2d 86, 630 N.W.2d 141, without a meaningful explanation, I find *Nankin* persuasive. In *Nankin,* the legislature provided different procedures for challenging property assessments depending on the population of the county in which the property was located, treating owners of property located in populous counties differently than owners of property located in other counties without a rational basis. The *Nankin* court concluded that no rational basis existed for treating taxpayers differently on the basis of the population of the county in which their property was located. No rational basis

---

[13] If the legislature or a statewide sentencing commission adopted different sentencing guidelines for each judicial district, it is hard to believe that this court would conclude that there is a rational basis for disparate sentencing across geographical lines. Yet as a result of the majority opinion it seems to me that such a sentencing structure would now be valid. Clearly the constitutionality of the guidelines does not depend on whether the legislature promulgates the guidelines or delegates the authority to the chief judges of each judicial district.

exists here either for treating offenders differently on the location of the county in a judicial administrative district.

¶ 61. The majority opinion's "rational" basis analysis is not saved by the declaration that this guideline system is merely an imperfect solution that is a "step in the right direction."[14] Decreases in disparity within a judicial district cannot save the increase in disparate sentences for fourth offense OWI offenders across the state. A legislatively mandated program that fosters and creates disparate guidelines from one geographical area in the State to another cannot be viewed as a step in the right direction of eliminating disparity in sentencing in the State of Wisconsin.[15]

¶ 62. The majority opinion's "rational" basis is also not saved by asserting that the sentencing scheme created under Wis. Stat. § 346.65(2m)(a) orders judicial districts to establish "permissive guidelines," not mandatory guidelines. The argument might be made that because the guidelines are permissive a circuit court must examine each offender and the circumstances of the offense in addition to the suggested guidelines and accordingly there is uniformity across the state. This reasoning rests on the premise that the guidelines are basically irrelevant or of little relevance because each circuit court must ultimately exercise its discretion free of the guidelines.

¶ 63. If the majority opinion is resting on this reasoning, the majority's thinking squarely contradicts its own rational basis argument that the statute fosters

---

[14] Majority op., ¶ 39.

[15] The judges in a county or district might adopt county-wide permissive guidelines. This is different from legislatively mandated district guidelines.

the elimination of disparity within each district. The majority opinion cannot argue that Wis. Stat. § 346.65(2m)(a) is constitutional because the guidelines decrease disparity within each judicial district if it also is arguing that the statute's constitutionality rests on the fact that each circuit court has no obligation to follow the guidelines and is free to impose whatever sentence it concludes fits the offender, offense, and public safety.

¶ 64. Clearly the legislature (and the chief judges) intend circuit courts to adhere to the guidelines to the extent possible and want the guidelines to have an effect on sentencing. Otherwise the guidelines are an exercise in futility.[16] Furthermore, our experience with guidelines demonstrates that they are very influential and that circuit courts ordinarily follow them or, at a minimum, use them as a starting point.

¶ 65. The OWI sentencing guidelines in place in the various districts do not reflect a movement towards greater statewide sentencing uniformity for similarly situated offenders who commit similar offenses and are similarly dangerous to the public. The guidelines reflect a movement towards greater sentencing disparity from district to district with differences in the guidelines based solely on geographical considerations. Because there is no rational basis for disparate sentences based

---

[16] As this court explained: "The advisory committee could hardly expect the use of sentencing guidelines to reduce variance and dispel any perception of unequal treatment in sentencing if it did not intend that judges follow the guidelines and impose sentence within the guideline matrix ranges, except in cases where aggravating or mitigating circumstances dictate otherwise." *Matter of Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d at 697.

upon the judicial district in which the offense occurred, I conclude that the statute is unconstitutional.

## III

¶ 66. Finally, the majority opinion completely ignores the possibility that Wis. Stat. § 346.65(2m)(a) is unconstitutional because it violates the separation of powers doctrine. Article VII, Section 3(1) of the Wisconsin Constitution states that "the supreme court shall have superintending and administrative authority over all courts."

¶ 67. Article VII, Section 3(1) makes it "incumbent on the legislature to exercise both deference and restraint when legislating in areas that impinge upon this [court's] authority."[17] The enactment of Wis. Stat. § 346.65(2m)(a) demonstrates both a lack of deference and a lack of restraint on behalf of the legislature and arguably impinges on our authority to supervise and administer the circuit courts and chief judges of the state.

¶ 68. This conclusion becomes clear when the history of the adoption of sentencing guidelines is set forth. In 1983, this court expressly refused to adopt an 18–month pilot program requiring circuit courts to use, according to their discretion, felony sentencing guidelines developed by the Advisory Committee for the Wisconsin Felony Sentencing Guidelines Project.[18] A goal of the sentencing guidelines was to "remedy an unjustifiable disparity of sentences imposed by Wiscon-

---

[17] *State v. Holmes,* 106 Wis. 2d 31, 75–76, 315 N.W.2d 703 (1982) (Coffey, J., concurring).

[18] *Matter of Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d at 690.

sin trial judges for like offenses,"[19] but the court noted that the 1983 report of the advisory committee stated "that there is no unjustified disparity in sentencing in Wisconsin courts."[20] The court concluded that an alleged public perception of sentencing disparity does not justify guidelines. The court further concluded that it is for the legislature, not the court, to "decide whether [judicial discretion] should be more closely circumscribed."[21]

¶ 69. One year later, the legislature enacted a statute giving this court the express authority to promulgate rules for sentencing guidelines to be used by Wisconsin courts.[22] This court refused to act, however, and according to the statute the authority to promulgate sentencing guidelines passed to a sentencing commission attached to the Wisconsin Department of Administration. The court explained its refusal this time by stating that the existing sentencing system was accomplishing the goal of consistency and that it was for the legislative branch, not the judicial branch, to decide the extent to which sentencing discretion should be limited to accomplish the goal of consistency in criminal sentencing:

> The legislature considers it most appropriate that this court promulgate rules for sentencing guidelines because it sees a direct relation between the establishment of the guidelines and the exercise of judicial discretion. We disagree; it is precisely because the determination of what constitutes an appropriate sentence in a particular case involves the exercise of

[19] *Id.* at 693.

[20] *Id.*

[21] *Id.* at 695.

[22] *In the Matter of Jud. Admin. Felony Sentencing Guidelines,* 120 Wis. 2d 198, 353 N.W.2d 793 (1984).

judicial discretion that we decline to promulgate guide-lines and thereby encroach on that discretion.[23]

¶ 70. By enacting Wis. Stat. § 346.65(2m)(a), the legislature circumvents this court's decision not to adopt sentencing guidelines. The legislature requires circuit court judges (whom this court has appointed as chief judges of judicial districts) to do on a district-by-district level what this court has already refused to do on a statewide scale, because adopting sentencing guidelines is a legislative, not a judicial, function.

¶ 71. For the foregoing reasons, I dissent.

---

[23] *Id.* at 203–04.

## FIFTH JUDICIAL DISTRICT OWI SENTENCING GUIDELINES
(Citations Issued on or After October 14, 1997)

| BAC Levels | Minimum Driving No Accident | Aggravated Driving Accident or Injury Bad Driving Record |
|---|---|---|

**FOURTH OFFENSE**

| BAC Levels | Minimum Driving No Accident | Aggravated Driving Accident or Injury Bad Driving Record |
|---|---|---|
| .149 And below | $600-1,000 fine 60 days jail 24-26 month revocation | $700-2,000 fine 60-90 days jail 24-36 month revocation |
| .15 to .199 | $700-1,000 fine 60-180 days jail 26-36 month revocation | $800-2,000 fine 60-210 days jail 30-36 month revocation |
| .20 and above or refusal | $800-1,500 fine 60-150 days jail 32-36 month revocation | $1,000-2,000 fine 90 days-1 year jail 36 month revocation |

**PENALTY RANGE**

JAIL (or Monitored Home Detention): 60 days - 12 months *
(min. 48 consecutive hours in jail)

FORFEITURE: $600-2,000

The following costs will be amended as necessary to reflect legislative changes.

Driver Improvement Surcharge $340
Court Costs $ 25
Penalty Assessment (23%)
Jail Assessment $ 10 or 1% of fine, whichever is greater
Victim/Witness Fee Part A $ 30
Victim/Witness Fee Part B $ 20
Crime Lab/Drug Law Assessment $ 4

REVOCATION: 24-36 months (90 Day waiting period and completion of Alcohol Assessment/Driver Safety Plan for Occupational License and absolute sobriety during use).

**ALCOHOL ASSESSMENT AND DRIVER SAFETY PLAN**

Court may order:

- The safety plan to include effect on any victim or victim's family.

- Community service work that demonstrates adverse effects of abuse (and a reasonable fee).

- A visit to site that demonstrates adverse effects of abuse (and a reasonable fee).

- Court may, after a finding of inability to pay, reduce the costs or forfeiture/fine and order the person to pay the difference toward the cost of the alcohol assessment and driver safety plan.

**IMMOBILIZATION OR IGNITION INTERLOCK**

Court may order only operation of vehicle equipped with ignition interlock, or as condition of occupational license.

**SEIZURE AND FORFEITURE OF OWNED VEHICLE**

If conviction within 10 year period.

*Court may order community service work to reduce the amount of a forfeiture/fine. Court may also order restitution.

**8TH JUDICIAL ADMINISTRATIVE DISTRICT**
**OWI SENTENCING GUIDELINES**
*Pursuant to Sec. 346.65(2m), Wis. Stats.*
**4TH OFFENSE [§346.65(2)(d)]**

Offenses committed on after October 14, 19

**PENALTY RANGE**

**JAIL:** 60 days - 12 months — Minimum and maximum imprisonment doubled if there was a minor passenger under age 16 [§346.65(2)(b)]. Offense is a felony and place of imprisonment determined under §973.02 [Minimum 48 consecutive hours in jail (§346.65(7)]

**FINE:** $600 - $2000* 

| | |
|---|---|
| Driver Improvement Surcharge (DIS) | $340 |
| Victim, Witness Surcharge (VW) | $ 50 |
| Court Costs | $ 20 |
| Crime Lab & Drug Assessment (CLDA) | $ 4 |
| Jail Assessment (JA) [1% or $10, whichever is greater] | |
| Penalty Assessment (PA) [23%] | |

Minimum and maximum forfeiture is doubled if there was a minor passenger under age 16 [§346 65(2)(

**REVOCATION:** 24 - 36 months. Minimum and maximum period is doubled if there was a minor passenger under age 16 [§343.30(1q)(b)4m]. (Occupational - 90 day waiting period, and must complete Alcohol Assessment and be in compliance with drivers safety plan and absolute sobriety during use.)

**ALCOHOL ASSESSMENT:**

*Court may order a reduction in court costs, fine or forfeiture to allow offender to pay the difference for an alcohol assessment and driver safety plan [§346.65(2e)].

Court **shall** order seizure and forfeiture of the offender's motor vehicle if conviction is within a 10 year period [§346.65(6)(a)2]. Court **may** order community service to reduce the amount of a fine or forfeiture [§346.65(2g)], and **may** order community service that demonstrates the adverse effects of substance abuse or driving under the influence, and **may** order a site visit that demonstrates the effects of substance abuse [§346.65(2g), §346.65(2i)]. Court **may** order restitution [§346.65(2r)(a)]. Court **may** order, as a condition of an occupational license, that a person operate only a motor vehicle equipped with an ignition interlock [§343.10(5)(a)3].

**DRIVING FACTORS**

| BAC LEVEL | Minimum driving No accident | | Aggravated driving, accident or injury - bad driving record | |
|---|---|---|---|---|
| .149 or below | $800.00 Fine 340.00 DIS 184 00 PA 50 00 VW 20 00 Costs 4.00 CLDA 10 00 JA **$1,408.00 Total** | 75 days jail, 36 months revocation | $850.00 Fine 340.00 DIS 195.50 PA 50.00 VW 20.00 Costs 4 00 CLDA 10 00 JA **$1,469.50 Total** | 100 days jail, 36 months revocation |
| .15 to .219 | $ 850.00 Fine 340 00 DIS 195.50 PA 50.00 VW 20 00 Costs 4 00 CLDA 10 00 JA **$1,469.50 Total** | 100 days jail, 36 months revocation | $ 900.00 Fine 340.00 DIS 207.00 PA 50.00 VW 20.00 Costs 4.00 CLDA 10.00 JA **$1,531.00 Total** | 125 days jail, 36 months revocation |
| .22 to .299 | $ 900.00 Fine 340 00 DIS 207.00 PA 50 00 VW 20.00 Costs 4.00 CLDA 10.00 JA **$1,531.00 Total** | 125 days jail, 36 months revocation | $ 950.00 Fine 340.00 DIS 218.50 PA 50 00 VW 20.00 Costs 4.00 CLDA 10.00 JA **$1,592.50 Total** | 150 days jail, 36 months revocation |
| .30 or above or refusal** | $ 950.00 Fine 340.00 DIS 218.50 PA 50.00 VW 20.00 Costs 4.00 CLDA 10.00 JA **$1,592.50 Total** | 150 days jail, 36 months revocation | $1000.00 Fine 340.00 DIS 230.00 PA 50 00 VW 20 00 Costs 4.00 CLDA 10.00 JA **$1,654.00 Total** | 175 days jail, 36 months revocation |

If separate finding of a refusal, 3 year revocation of operating privileges and 120 day waiting period for an occupational. Revocation period doubl[ed] [if the]re was a minor passenger under age 16 [§343.305(10)(b)4m]

## FOURTH JUDICIAL DISTRICT OWI SENTENCING GUIDELINES

(Eff. 10/14/97)

FOURTH OFFENSE (§346.65(2)(d))

JAIL: 60 DAYS - 12 MONTHS
(minimum 48 consecutive hours in jail)

FINE: $600 - $2000* (plus surcharges and costs)

REVOCATION: 24 - 36 MONTHS (90 DAY WAITING PERIOD FOR OCCUP. LICENSE,
and absolute sobriety during use)

ALCOHOL ASSESSMENT: Surrender Driver's License - 6 points driving record
The court may order a reduction in court costs, fine or forfeiture so an offender is able to pay the difference for an alcohol assessment and driver safety plan.

* The court must order seizure and forfeiture of the offender's motor vehicle. Court may order community service to reduce the amount of a fine or forfeiture, and may order a fee to offset the cost of community service that demonstrates the adverse effects of substance abuse or driving under the influence, and may order a site visit that demonstrates the effects of substance abuse. Court may also order restitution. In lieu of county jail time, court may impose monitored detention at home or other site designated by the court. Applicable minimum, maximum and guideline forfeitures, fines or imprisonment, and suspensions and revocations are doubled if a minor age 15 or less is a passenger at the time of the violation (1995 ACT 425; §343.30(1q)(b)4m; §343.305(10)(b)4m; §346.65(2)(f)).

### DRIVING FACTORS

| BAC LEVEL | Minimum Driving No Accident | | Aggravated Driving Accident or Injury Bad Driving Record | |
|---|---|---|---|---|
| .15 & Below | Fine | $750.00 | Fine | $900.00 |
| | Surcharge | 340.00 | Surcharge | 340.00 |
| | Costs | 20.00 | Costs | 20.00 |
| | P.A. | 172.50 | P.A. | 207.00 |
| | Crime Lab fee | 4.00 | Crime Lab fee | 4.00 |
| | Vic/Wit. Sur.- A | 30.00 | Vic/Wit. Sur.- A | 30.00 |
| | Vic/Wit. Sur.- B | 20.00 | Vic/Wit. Sur.- B | 20.00 |
| | Jail Assessment | 10.00 | Jail Assessment | 10.00 |
| | | $1346.50 | | $1531.00 |
| | 60 days jail-24 mon revoc. | | 75 days jail-28 mon revoc. | |
| .16 to .22 | Fine | $900.00 | Fine | $1050.00 |
| | Surcharge | 340.00 | Surcharge | 340.00 |
| | Costs | 20.00 | Costs | 20.00 |
| | P.A. | 207.00 | P.A. | 241.50 |
| | Crime Lab fee | 4.00 | Crime Lab fee | 4.00 |
| | Vic/Wit. Sur.- A | 30.00 | Vic/Wit. Sur.- A | 30.00 |
| | Vic/Wit. Sur.- B | 20.00 | Vic/Wit. Sur.- B | 20.00 |
| | Jail Assessment | 10.00 | Jail Assessment | 10.50 |
| | | $1531.00 | | $1716.00 |
| | 75 days jail-28 mon revoc. | | 90 days jail-32 mon revoc. | |
| Refusal .23 & above | Fine | $1050.00 | Fine | $1200.00 |
| | Surcharge | 340.00 | Surcharge | 340.00 |
| | Costs | 20.00 | Costs | 20.00 |
| | P.A. | 241.50 | P.A. | 276.00 |
| | Crime Lab fee | 4.00 | Crime Lab fee | 4.00 |
| | Vic/Wit. Sur.- A | 30.00 | Vic/Wit. Sur.- A | 30.00 |
| | Vic/Wit. Sur.- B | 20.00 | Vic/Wit. Sur.- B | 20.00 |
| | Jail Assessment | 10.50 | Jail Assessment | 12.00 |
| | | $1716.00 | | $1902.00 |
| | 90 days jail-32 mon revoc. | | 105 days jail-36 mon revoc. | |

MITIGATING FACTORS: Ability to Pay - Defendant's Conduct Since Offense, including assessment and driving plan before conviction - Consequences to Defendant - Consequences to Victim(s) - Cooperation of Defendant - Pros. Recommendation.

198

## Judicial Administrative
## Districts of Wisconsin

