STATE of Wisconsin, Plaintiff-Respondent,

v.

Roland A. SMART, Defendant-Appellant.†

Court of Appeals

*No. 02–0569–CR. Submitted on briefs July 8, 2002.—Decided August 27, 2002.*

2002 WI App 240

(Also reported in 652 N.W.2d 429.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Catharine D. White*, assistant district attorney of Shawano.

Before Cane, C.J., Hoover, P.J., and Peterson, J.[1]

[1] Originally assigned as a one-judge appeal, this case was reassigned to a three-judge panel on August 16, 2002. *See* WIS. STAT. RULE 809.41. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 1. CANE, C.J. Roland Smart appeals a judgment of conviction for operating while intoxicated, third offense, contrary to Wis. Stat. § 346.63(1)(a), and operating while intoxicated with a prohibited blood alcohol content, third offense, contrary to § 346.63(1)(b). He also appeals an order denying postconviction relief. Smart contends Wisconsin's drunk driving sentencing scheme, by allowing each judicial district to establish presumptive guidelines, violates due process and equal protection because it allows for different sentences of similarly situated offenders based solely on the jurisdiction where they were convicted. He also argues the court violated due process and equal protection by refusing to reduce his sentence in light of a reduction in the local guidelines after he committed the offense. Smart contends other courts subject to the local guidelines applied the lower sentence recommendation to persons arrested for drunk driving before the reduction. Neither the sentencing guidelines nor the court's application of them violate Smart's due process or equal protection rights. Therefore, we affirm the circuit court's judgment and order.

## BACKGROUND

¶ 2. In June 2001, the Shawano County district attorney charged Smart with operating a motor vehicle while under the influence of an intoxicant, third offense and operating while intoxicated with a prohibited blood alcohol content, third offense. Smart pled no contest to both charges in September 2001 and the circuit court found him guilty. The court sentenced Smart to ten months in jail and imposed $1,910 in fines and costs. Smart's jail sentence was the length recommended by the sentencing guidelines in effect in the Ninth Judicial District at the time of his offense. In August 2001, the

716

chief judge of the district reduced the guideline for Smart's offense to 120 days in jail. This had also been the recommended penalty before January 2001.

¶ 3. Smart filed a motion for postconviction relief arguing the guidelines violated his due process and equal protection rights. He argued the general scheme allowing each judicial district to establish sentencing guidelines for drunk driving was improper because it allowed similarly situated offenders across the state to receive different sentences based solely on the venue of their conviction. He also argued his sentence violated his rights because other counties within the district were sentencing offenders who had been convicted during the increased guidelines period using the lower guidelines. The circuit court denied Smart's motion and he appeals.

## DISCUSSION

¶ 4. Pursuant to Wis. Stat. § 346.65(2m), the Ninth Judicial District has adopted sentencing guidelines for persons convicted of driving while intoxicated. This statute authorizes the chief judge in each judicial district to adopt these guidelines, which are to consider any aggravating and mitigating factors. As noted, the ninth district's jail time guideline for Smart's offense is 120 days, except between January 2001 and August 2001, when it was ten months. Had he been convicted of the same crime in other judicial districts, Smart would have likely received a much shorter jail term. In the tenth district, the guideline is 110 days; in the eighth, seventy-five days; and in the fourth, forty-five days. Smart argues this disparity violates his equal protection and substantive due process rights.

717

## I. Equal protection

¶ 5. Smart first argues the sentencing guidelines violate his right to equal protection under the United States and Wisconsin Constitutions. He suggests we should subject the guidelines to a strict scrutiny analysis because they implicate a fundamental liberty interest. We disagree. It is not a fundamental right to be free from deprivations of liberty as a result of arbitrary distinctions. *See Chapman v. United States*, 500 U.S. 453, 464–65 (1991). If a fundamental right is not implicated, the issue is whether there is arbitrary discrimination in the statute and whether there is a rational basis that justifies the difference in rights afforded. *State v. Joseph E.G.*, 2001 WI App 29, ¶ 8, 240 Wis. 2d 481, 623 N.W.2d 137. A statute that creates a classification that is rationally related to a valid legislative objective does not violate equal protection guarantees. *Id.*

¶ 6. The statute creates different classes of people. It makes persons convicted of driving while under the influence in one judicial district subject to potentially different sentencing standards from those in other districts. While the statute itself does not mention a rationale, Smart suggests sentencing guidelines generally function to reduce sentencing disparity among persons who commit similar offenses, and we agree. *See State v. Speer*, 176 Wis. 2d 1101, 1124, 501 N.W.2d 429 (1993).

¶ 7. Smart argues the guideline scheme does not bear a rational relationship to the objective of reducing disparity and actually increases it by allowing each judicial district to develop their own standards. While we agree the statute may not be the best way to reduce

drunk driving sentencing disparity, a rational basis inquiry does not require perfection. Our only question is whether the statute bears some relationship to advancing that goal. It does. By mandating the creation of guidelines within judicial districts, the statute attempts to reduce sentencing disparity within those districts. While statewide guidelines would perhaps be more equitable, there is no requirement the legislature choose the wisest or most effective means of reducing disparity. *See Stanhope v. Brown County*, 90 Wis. 2d 823, 843, 280 N.W.2d 711 (1979).

¶ 8. Smart also contends our supreme court's decision in *Nankin v. Village of Shorewood*, 2001 WI 92, 245 Wis. 2d 86, 630 N.W.2d 141, and the United States Supreme Court's decision in *Bush v. Gore*, 531 U.S. 98 (2000), both require us to find an equal protection violation. In *Nankin*, the supreme court determined a statute that offered fewer options for residents in larger counties to challenge their property tax assessments violated equal protection. *Nankin*, 2001 WI 92 at ¶ 46. The statute limited property owners in the state's larger counties to certiorari review of their assessment in circuit court while property owners in smaller counties were allowed to seek de novo review. *Id.* at ¶ 6. The supreme court determined this distinction was without a rational basis. *Id.* at ¶ 46. Although Shorewood argued judicial economy and efficiency justified the distinction, the court rejected both of these arguments. *Id.* at ¶ 38.

¶ 9. *Nankin* is distinguishable. The statute at issue in *Nankin* created disparity in treatment of property owners based solely on the population of the county in which they lived. *See Nankin*, 2001 WI 92 at ¶ 13. In contrast, the statute here is remedial. It serves to decrease disparity by creating presumptive sentences

for driving while under the influence within judicial districts. *See* WIS. STAT. § 346.65(2m).

¶ 10. Nor does *Bush* suggest the sentencing scheme violates equal protection. In *Bush*, the Supreme Court prevented a proposed recount of presidential ballots because of the possibility of different standards being used by the entities recounting the ballots across the state. *Bush*, 531 U.S. at 110. Again, the statute here seeks to redress disparate treatment, whereas the Supreme Court was concerned the proposed recount would create unequal treatment of voters. We also note the right to vote for president of the United States, once conferred by a state, is a fundamental right. *Id.* at 104. Although it is unclear from the decision, the Florida recount proposal was arguably subjected to greater scrutiny than the rational basis analysis required here. *See id.* at 104–05. Application of the *Bush* case does not suggest the sentencing scheme violates equal protection.

## II. DUE PROCESS

¶ 11. Smart next argues the sentencing scheme violates his substantive due process rights. Substantive due process protects people from state conduct that "shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *Joseph E.G.*, 2001 WI App 29 at ¶ 13 (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Unless it infringes on a "fundamental right," a statute will generally survive a substantive due process challenge if it is rationally related to a legitimate government interest. *State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989).

¶ 12. In the context of criminal sentencing, arguments based on due process and equal protection are essentially duplicative. *Chapman*, 500 U.S. at 465. As noted, the right to be free from an arbitrary sentence after conviction is not a fundamental right. *Id.* at 464–65. Further, we have already determined a rational basis exists for the sentencing guidelines. The guidelines do not violate Smart's substantive due process rights.

III. DISPARATE SENTENCES WITHIN THE NINTH DISTRICT

¶ 13. Finally, Smart argues the trial court's sentence and its subsequent refusal to modify it violates his equal protection and due process rights because other counties within the ninth district sentenced persons who were arrested for operating while under the influence between January and August of 2001 using the 120–day guideline. At the outset, we note the only evidence in the record of these reduced sentences occurring is a few brief comments by the circuit court. Assuming this disparate sentencing occurred, it is well established in Wisconsin that mere disparity in the sentences received by persons committing similar crimes does not establish a denial of due process. *State v. Macemon*, 113 Wis. 2d 662, 669, 335 N.W.2d 402 (1983). Further, it is inappropriate for a sentencing court to change an imposed sentence unless new factors are made known. *Id.* at 668. Sentencing is a discretionary act and will be upheld if there is evidence in the record the court in fact exercised its discretion. *Id.* at 667.

¶ 14. The circuit court did not violate Smart's due process and equal protection rights when it refused to modify his sentence. In *Macemon*, our supreme court

determined the implementation of voluntary felony sentencing guidelines was not a new factor for a court to consider in modifying a defendant's sentence. *Id.* at 669. Similarly, we do not believe the modification in the ninth district's guideline was a new factor for the trial court to consider regarding Smart's motion to modify his sentence.

¶ 15. Nor can we say the court erroneously exercised its discretion in sentencing Smart. The court sentenced Smart under the guidelines in effect when he committed his offense. While other counties within the district may have given shorter sentences to others convicted during the same period, it was within their discretion to do so. The guidelines are not mandatory, and a court may disregard them if it so chooses. Here, the court noted Smart's prior drunk driving convictions and his high blood alcohol content at the time of arrest and chose to sentence him according to the applicable guidelines. The record shows Smart's sentence resulted from a proper exercise of the court's discretion.

*By the Court.*—Judgment and order affirmed.