STATE of Wisconsin, Plaintiff-Respondent,†

v.

Leonard A. SARNOWSKI, Defendant-Appellant.

Court of Appeals

*No. 04–0679–CR. Submitted on briefs February 8, 2005.—
Decided February 23, 2005.*

2005 WI App 48

(Also reported in 694 N.W.2d 498.)

† Petition to review denied 9-8-2005.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael K. Gould,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager,* attorney general, and *Christopher G. Wren,* assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J.   Leonard A. Sarnowski appeals from a judgment convicting him of violating WIS. STAT. § 948.22(2) (1999–2000) by not supporting his children for at least 120 consecutive days, and from the trial court's order denying his motion for postconviction relief. Sarnowski waived his right to a jury, and the case was tried to the trial court. Sarnowski contends that the judge improperly based her finding of guilt on what she knew from her own experience rather than the evidence at trial. We agree and reverse.

I.

¶ 2.   WISCONSIN STAT. § 948.22(2) makes it a crime to "intentionally" not support one's minor children "for 120 or more consecutive days" when one is "legally

obligated" to do so. The State charged that Sarnowski did not support his children for more than 120 consecutive days between October 1, 2000, and May 1, 2001.

¶ 3.   Through counsel and personally, Sarnowski agreed that he was under a court order requiring him to pay child support, that he knew about the order, and that he did not make the required payments for the 120 or more consecutive days. Accordingly, the parties stipulated that the only issue for trial was whether he "intentionally" did not make the required payments.

¶ 4.   WISCONSIN STAT. § 948.22(6) (1999–2000) made (and makes today, *see* § 948.22(6) (2003–04)) the "inability" to support one's children an affirmative defense, but provides that "[a] person may not demonstrate inability to provide child ... support if the person is employable but, without reasonable excuse, either fails to diligently seek employment, terminates employment or reduces his or her earnings or assets." The defendant has the burden of proving this affirmative defense "by a preponderance of the evidence." *Ibid.*

¶ 5.   Sarnowski was thirty-five years old at the time of trial. He did not graduate from high school but later earned his General Equivalency Diploma. He testified that he went into the carpentry "trade when I was around 20." He asserted that he did not meet his child-support obligations during the relevant period because he could not find work.

¶ 6.   Sarnowski testified that in the late 1990s he had worked as a carpenter for Atlas Realty and "[r]ehabbed houses" for the company but was let go in September of 2000 because it did not need him anymore. He claimed that he looked for work, but was unable to find it because of what he contended was a slow period in construction. He named a number of places where he sought work, and told the trial court

that he also either telephoned potential employers or went to job sites looking for work "at least three or four [times] a week." He testified that the woman with whom he lived supported him.

¶ 7.  Sarnowski's former wife testified that she believed Sarnowski was working from October 1, 2000, to May 1, 2001, at various construction jobs "for himself" and for cash. Other than this testimony, the State did not introduce any evidence contradicting Sarnowski's story. It also did not introduce any evidence about the Milwaukee job market from October 1, 2000, to May 1, 2001, relevant to Sarnowski's work experience or abilities.

¶ 8.  As noted, the trial court found Sarnowski guilty of violating Wis. Stat. § 948.22(2) (1999–2000). In an oral opinion explaining the finding, the trial court recognized that it was presented with "competing statements" by Sarnowski and his former wife about whether Sarnowski worked from October 1, 2000, to May 1, 2001. The trial court credited the testimony of Sarnowski's former wife, but, as explained in its oral opinion and in its written decision denying Sarnowski's motion for postconviction relief, it did so not because of an assessment of their respective demeanors, but, rather, largely because of the trial judge's personal experience looking for carpenters. Thus, in its oral decision, the trial court reflected:

> Interestingly enough, in October of 2000, my husband and I closed on an old house built in 1894. Before we were able to move in in April of 2001, we essentially gutted and redid this house. And I think I can speak from my recollection of this period of time in October of 2000, the economy had not yet gone through the huge slow down that it went through between—I don't know—different industries at different times, but it's

247

safe to say right now the economy is slower than it was in October of 2000 based upon employment figures and so on. The slow down was only just beginning at that point. But during our experience between October of 2000 and April of 2001 and trying to get people to the job site to do work, it appeared that there were too few workers available to do the work that needed to be done.

Mr. Sarnowski's testimony was that he does not do only the exterior work but that he does remodeling, and he does install cabinets and hanging of the doors. That when he worked for Atlas, he was rehabbing homes for the realty company. I think fact finders are entitled to also use their experience in the affairs of life, and it has not been my experience—and I specifically remember that period of time that there was a shortage of work in the remodeling industry.

¶ 9.   In its written decision denying Sarnowski's motion for postconviction relief, the trial judge reiterated her reliance on what she knew from her home-remodeling experience:

It is undisputed that the court considered its own experiences in finding that the defendant could have found a job if he wanted to. The court specifically commented on its efforts to renovate a house during the same period of time the defendant was looking for work. The court did not see a slowdown in the economy which supported the defendant's position; rather, based on its own experience, it found workers having the same occupation were extremely scarce.

(Record references omitted.)

¶ 10.   The decision quoted and rejected Sarnowski's contention that the trial court had improperly taken judicial notice of the job market for the construction industry or home rehabbing carpenters: "The court

was not taking 'judicial notice of disputed non-adjudicative economic "facts." ' Rather, it was acting as a factfinder and weighing the evidence." (Record references omitted.)

## II.

¶ 11.   A trial court's admission or exclusion of evidence is a discretionary decision that we will sustain if it is consistent with the law. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). We review *de novo* whether that decision comports with legal principles. *See State v. Pittman*, 174 Wis. 2d 255, 275, 496 N.W.2d 74, 82 (1993).

¶ 12.   Verdicts, whether rendered by juries or judges, must either be based on the evidence properly admitted at the trial, or matters for which judicial notice may be taken. Although there is some evidentiary leeway in trials to the court, bench-trial judges may not use inadmissible evidence to decide a "critical issue." *McCoy v. May*, 255 Wis. 20, 25, 38 N.W.2d 15, 17 (1949). Both juries and judges may, of course, draw logical inferences from the evidence, connecting its dots into a coherent pattern. *De Keuster v. Green Bay & W. R.R. Co.*, 264 Wis. 476, 479, 59 N.W.2d 452, 454 (1953).

¶ 13.   Trial courts may take judicial notice in limited areas—"fact[s] generally known within the territorial jurisdiction of the trial court," or "fact[s] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." WIS. STAT. RULE 902.01(2). Significantly, a court may not take judicial notice unless the parties have at some point "an

opportunity to be heard." Rule 902.01(5).[1] Further, a judge may not take "judicial notice" of things that he or she knows unless that knowledge also falls within the rule. *State v. Peterson*, 222 Wis. 2d 449, 457–458, 588 N.W.2d 84, 87–88 (Ct. App. 1998) ("A trial court sitting as fact-finder may derive inferences from the testimony and take judicial notice of a fact that is not subject to reasonable dispute, but it may not establish as an adjudicative fact that which is known to the judge as an individual.") (footnotes omitted).

¶ 14. As we have seen, the trial judge here indicated that she was not relying on judicial notice when

---

[1] Wisconsin Stat. Rule 902.01 reads in full:

**Judicial notice of adjudicative facts. (1)** Scope. This section governs only judicial notice of adjudicative facts.

**(2)** Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is any of the following:

(a) A fact generally known within the territorial jurisdiction of the trial court.

(b) A fact capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

**(3)** When discretionary. A judge or court may take judicial notice, whether requested or not.

**(4)** When mandatory. A judge or court shall take judicial notice if requested by a party and supplied with the necessary information.

**(5)** Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

**(6)** Time of taking notice. Judicial notice may be taken at any stage of the proceeding.

**(7)** Instructing jury. The judge shall instruct the jury to accept as established any facts judicially noticed.

she found Sarnowski guilty, even though that finding was based largely on her personal experiences in trying to find carpenters to help gut and redo her 19th-Century house. Rather, she wrote in her decision denying Sarnowski's motion for postconviction relief that she was merely "weighing the evidence," albeit through the filter of her "own experience."

¶ 15.    Although as the trial court pointed out, jurors are routinely told that "[i]n weighing the evidence, you may take into account matters of your common knowledge and your observations and experience in the affairs of life," WIS JI—CRIMINAL 195, the shortage, *vel non,* of carpenters in the Milwaukee area from October 1, 2000, to May 1, 2001, is not something within the "common knowledge" of either jurors or judges. Additionally, the trial judge's trouble getting carpenters help to fix up her house is not, without more, evidence of job opportunities for carpenters in the Milwaukee area during that period. Had the State introduced competent evidence relevant to the employability of Milwaukee area carpenters during that time, the trial court could have used that evidence to assess Sarnowski's testimony and "inability" defense, drawing whatever inferences she deemed appropriate. But by using her specific experience as a substitute for that evidence, which was not subject to judicial notice, the trial judge became, in essence, an impermissible surrogate witness for that evidence. *See Solberg v. Robbins Lumber Co.,* 147 Wis. 259, 265, 133 N.W. 28, 30 (1911) (jurors may use personal knowledge to understand the evidence; they may not "supply a material item of evidence by assuming knowledge on the subject").

¶ 16.    The trial judge erred by using her experience in trying to get carpenters to work on her house as

a basis for her decision on the critical issue of whether Sarnowski had established his "inability" defense under WIS. STAT. § 948.22(6). Accordingly, we reverse and remand for a new trial.[2]

· *By the Court.*—Judgment and order reversed and cause remanded.

---

[2] Sarnowski does not contend that if the trial judge's personal experience is not considered that there is insufficient evidence to find that he had not established his defense. Accordingly, we do not consider whether a remand for trial violates his right to be free from double jeopardy. *See State v. Ivy*, 119 Wis. 2d 591, 609–610, 350 N.W.2d 622, 631–632 (1984) ("[W]here a defendant claims on appeal from a conviction that the evidence is insufficient to sustain the conviction, the appellate court is required to decide the sufficiency issue even though there may be other grounds for reversing the conviction that would not preclude retrial.").