STATE of Wisconsin, Plaintiff-Respondent,

v.

Gerald L. LYNCH, Jr., Defendant-Appellant.†

Court of Appeals

*No. 2005AP2128–CR. Submitted on briefs May 12, 2006.
—Decided October 5, 2006.*

2006 WI App 231

(Also reported in 724 N.W.2d 656.)

† Petition to review denied 1/9/07.

51

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David R. Karpe*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. VERGERONT, J. Gerald Lynch, Jr. appeals his sentence for homicide by intoxicated use of a vehicle and two counts of fleeing from an officer resulting in bodily harm. He also appeals the court's order denying his postconviction motion. Lynch seeks resentencing based on two contentions: (1) the statutes that make him ineligible for the earned release program, WIS. STAT. §§ 302.05(3)(a)1. and 973.01(3g),[1] violate his rights to equal protection and substantive due process under the federal and state constitutions; and (2) the circuit court relied on improper and inaccurate information when imposing his sentence.

¶ 2. We conclude that WIS. STAT. §§ 302.05(3)(a)1. and 973.01(3g) do not violate Lynch's rights to equal protection or substantive due process. We also conclude Lynch has not established that the circuit court relied on improper or inaccurate information in sentencing and he has not shown that he was erroneously denied an evidentiary hearing at which to establish that. Accordingly, we affirm.

BACKGROUND

¶ 3. The charges in this case arose out of an incident in which Lynch, under the influence of alcohol, led police officers on a high-speed chase, which ended

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

when Lynch's vehicle collided with another. One person was killed and two people were injured in the collision. Pursuant to a plea agreement, Lynch pleaded no-contest to homicide by intoxicated use of a vehicle contrary to WIS. STAT. § 940.09(1)(a) and to two counts of fleeing from an officer resulting in bodily harm contrary to WIS. STAT. § 346.04(3); the circuit court dismissed eight other charges, reading in two for sentencing purposes.

¶ 4. At sentencing, the circuit court determined that Lynch was ineligible to participate in the earned release program because he was convicted of a crime contained in WIS. STAT. ch. 940, which is titled "Crimes Against Life and Bodily Security." Under the earned release program, eligible inmates obtain early release from the confinement portion of their sentences if the department of corrections determined that they have successfully completed a substance abuse program operated by the department. *See* WIS. STAT. § 302.05(1), (3)(b)-(c). An "eligible inmate" is defined as an inmate who is incarcerated for violations other than certain specified ones and who the sentencing court determines, in the exercise of its discretion, is eligible to participate in the program. WIS. STAT. §§ 302.05(3)(a), (e) and 973.01(3g). "Crimes under ch. 940" are included in the list of excluded crimes, meaning that an inmate convicted of a crime under that chapter may not participate in the program. Sections 302.05(3)(a)1. and 973.01(3g).[2]

---

[2] WISCONSIN STAT. § 302.05(3)(a) provides:

(3)(a) In this subsection, "eligible inmate" means an inmate to whom all of the following apply:

1. The inmate is incarcerated regarding a violation other than a crime specified in ch. 940 or s. 948.02, 948.025, 948.03, 948.05, 948.055, 948.06, 948.07, 948.075, 948.08, or 948.095.

¶ 5. During the sentencing proceeding, Lynch addressed the court and expressed his remorse for his actions, his efforts to rehabilitate himself, and his speaking to groups about the dangers of drinking and driving. He also called a certified drug and alcohol abuse counselor who described Lynch's efforts with drug and alcohol treatment while on bond and his need for long-term treatment. A presentence investigation report submitted by the defense also reported that Lynch had been seeking numerous speaking engagements during which he would discuss his personal experience and the consequences of driving while intoxicated.

¶ 6. In sentencing Lynch, the court discussed, among other factors, the gravity of the offense, Lynch's criminal record and personal history, his treatment needs, protection of the public, and deterrence. The court also referred to Lynch's expressions of remorse and to a television interview featuring Lynch that the court had recently seen:

> I don't doubt your expressions of remorse at this time, but that remorse isn't going to make anybody any better today, and, frankly, when I saw you on TV the other night, I was struck by the thought that that

2. If the inmate is serving a bifurcated sentence imposed under s. 973.01, the sentencing court decided under par. (e) or s. 973.01(3g) that the inmate is eligible to participate in the earned release program described in this subsection.

WISCONSIN STAT. § 973.01(3g) provides:

> (3g) EARNED RELEASE PROGRAM ELIGIBILITY. When imposing a bifurcated sentence under this section on a person convicted of a crime other than a crime specified in ch. 940 or s. 948.02, 948.025, 948.03, 948.05, 948.055, 948.06, 948.07, 948.075, 948.08, or 948.095, the court shall, as part of the exercise of its sentencing discretion, decide whether the person being sentenced is eligible or ineligible to participate in the earned release program under s. 302.05(3) during the term of confinement in prison portion of the bifurcated sentence.

appeared to be self-serving knowing that you had sentencing coming up today. I will indicate that your efforts at addressing your problems are noteworthy, as is your speaking to various groups, but that in and of itself isn't a determinative consideration here. It certainly acts to mitigate what I consider to be the gravity· of your offenses, but mitigation only carries you so far.

¶ 7. The court sentenced Lynch to twenty-five years on the homicide count—thirteen years of initial confinement and twelve years of extended supervision —and to five years on each of the two fleeing counts— one year of initial confinement and four years of extended supervision—consecutive to each other and to the homicide sentence.

¶ 8. Lynch filed a motion seeking resentencing on the ground that the statutes precluding him from participating in the earned release program because he was convicted of a crime in WIS. STAT. ch. 940 violate his right to equal protection and substantive due process. Lynch also contended that the court erred in relying on the television interview because it was not made part of the record, he had no notice the court was going to consider it, and he had no control over what was in the interview. The circuit court denied the motion. The court concluded the statutes were constitutional and Lynch had not shown that the court had relied on improper, inaccurate, or prejudicial information in sentencing him. Lynch appeals this order, contending that the court erred on both points.

## ANALYSIS

I. Constitutional Challenge to Exclusion from Earned Release Program

¶ 9. Lynch contends that WIS. STAT. §§ 302.05(3)(a)1. and 970.01(3g) violate his rights to

equal protection and substantive due process under both the federal and state constitutions because they treat him differently than a person who was driving while intoxicated but did not cause a death or great bodily harm.[3] This difference in treatment, Lynch asserts, is not justified under the applicable constitutional standards.

¶ 10. The constitutionality of a statute presents a question of law, which we review de novo. *Ferdon v. Wisconsin Patients Comp. Fund*, 2005 WI 125, ¶ 58, 284 Wis. 2d 573, 701 N.W.2d 440. In our review we presume the legislature acted within its constitutional limits and the challenger bears a heavy burden; we resolve any doubts in favor of the constitutionality of the statute. *Id.*, ¶ 68. This "heavy burden" does not refer to evidentiary proof; in this context, it means that we give deference to the legislature, and our degree of certainty regarding unconstitutionality results from the persuasive force of the legal argument. *Id.*, ¶ 68 n.71.

¶ 11. We consider first Lynch's equal protection claim. Both the United States Constitution and the Wisconsin Constitution guarantee equal protection of the laws. *See* U.S. Const. amend. XIV, § 1 and Wis. Const. art. I, § 1. In *State v. Hezzie R.*, 219 Wis. 2d 848, 893, 580 N.W.2d 660 (1998), the supreme court stated that it had treated the federal and state equal protection guarantees as equivalent. More recently, in *Ferdon*, 284 Wis. 2d 573, ¶¶ 57–80, the supreme court discussed and applied the state equal protection guarantee. Because neither party's arguments distinguish between

---

[3] WISCONSIN STAT. § 940.25(1)(a) makes it a crime to cause great bodily harm by operation of a vehicle while under the influence of an intoxicant.

the federal and state equal protection guarantees, we will apply the standards articulated in *Ferdon* and will assume, without deciding, that the analysis under the federal equal protection clause is the same.

¶ 12. In determining whether a statute violates the equal protection clause, we first decide the level of scrutiny to employ. *Id.*, ¶ 59. We apply the most scrutiny—"strict scrutiny"—when the statute or classification " 'impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.' " *Id.*, ¶ 61 (citations omitted). Under this level of scrutiny, the State must prove that the classification is precisely tailored to promote a compelling governmental interest. *Id.* Lynch argues that strict scrutiny is appropriate here.

¶ 13. The State, on the other hand, argues that we should employ the lower level of scrutiny, or the "rational basis" standard. Under this standard, we uphold a statute against an equal protection challenge "if a plausible policy reason exists for the classification and the classification is not arbitrary in relation to the legislative goal." *Id.*, ¶ 73 (citations omitted). A statute is unconstitutional if it "is shown to be 'patently arbitrary' with 'no rational relationship to a legitimate government interest.' "[4] *Id.*

---

[4] Neither party argues that the intermediate level of scrutiny is appropriate. Under this level of scrutiny, the classification " 'must serve important governmental objectives and must be substantially related to achievement of those objectives.' " *Ferdon v. Wisconsin Patients Comp. Fund*, 2005 WI 125, ¶ 63, 284 Wis. 2d 573, 701 N.W.2d 440 (citation omitted).

¶ 14. We agree with the State that the rational basis standard is the appropriate one. The supreme court and this court have consistently applied the rational basis standard when deciding equal protection challenges to statutes involving differences in criminal penalties. *See, e.g., State v. Jorgensen,* 2003 WI 105, ¶¶ 28–41, 264 Wis. 2d 157, 667 N.W.2d 318 (statute allowing each judicial district to establish sentencing guidelines for drunk driving); *State v. Smart,* 2002 WI App 240, ¶¶ 5–12, 257 Wis. 2d 713, 652 N.W.2d 429 (statute allowing each judicial district to establish sentencing guidelines for drunk driving); *State v. Gardner,* 230 Wis. 2d 32, 47, 601 N.W.2d 670 (Ct. App. 1999) (penalty structure for armed burglary versus unarmed burglary); *State v. Block,* 222 Wis. 2d 586, 590–95, 587 N.W.2d 914 (Ct. App. 1998) (classification of some crimes as "serious" for purposes of persistent repeater penalty).

¶ 15. Lynch relies on *Mempa v. Rhay,* 389 U.S. 128 (1967), to support his argument that the challenged statutes interfere with a fundamental right; but that case does not support his position. The Court in that case held that a criminal defendant was entitled to counsel at a proceeding at which his probation was revoked and sentence was imposed because it was a stage in the criminal proceeding at which substantial rights of the defendant may be affected. *Id.* at 134. *Mempa* does not suggest, as Lynch argues, that classifications of crimes in ways that affect sentencing implicate a fundamental right.

¶ 16. Lynch contends that, even if we apply the rational basis standard, the classification excluding him from the program is invalid. He argues that the purpose of the earned release program is to provide an incentive to nonviolent-nonassaultive offenders to participate in alcohol and drug treatment designed to reduce future

criminal behavior. According to Lynch, distinguishing between those who drive while intoxicated and cause death or great bodily harm and those who drive while intoxicated and do not cause those consequences is not rationally related to this purpose. His conduct, Lynch asserts, is the same as that of persons who have driven while under the influence of an intoxicant but who have not been convicted of a crime under WIS. STAT. ch. 940, and it is irrational to treat him differently by excluding him from a program designed for inmates with substance abuse problems.

¶ 17. In analyzing whether a statutory classification meets the rational basis standard, we " 'are obligated to locate or, in the alternative, construct a rationale that might have influenced the legislative determination.' " *Ferdon*, 284 Wis. 2d 573, ¶ 74 (citations omitted). The point of our inquiry is to "determine whether the legislation has more than a speculative tendency as the means for furthering a valid legislative purpose." *Id.*, ¶ 78. This standard "does not require the legislature to choose the best or wisest means to achieve its goals. Deference to the means chosen is due even if the court believes the same goal could be achieved in a more effective manner." *Id.*, ¶ 76 (citations omitted).[5]

[5] In his argument, Lynch uses the five-part formulation of the rational basis test from *Aicher v. Wisconsin Patients Compensation Fund*, 2000 WI 98, ¶ 58, 237 Wis. 2d 99, 613 N.W.2d 849: (1) the classification must be based on substantial distinctions; (2) it must be germane to the purposes of the law; (3) it cannot be based only on existing circumstances (that is, it must not preclude addition to the numbers in the class); (4) it must apply equally to all members of the class; and (5) the characteristics of the class must be substantially different from other classes such as to suggest the propriety of substantially

63

¶ 18. Applying this standard, we conclude there is a rational basis for not allowing persons convicted of crimes under Wis. Stat. ch. 940 to participate in the earned release program. While one purpose of the earned release program is undoubtedly to encourage inmates to participate in treatment for substance abuse, it is also significant that the result of successful participation is a reduction in the time a convicted person must serve in confinement.[6] In effect, participation in the program is an opportunity to have a lesser punishment than that originally imposed. Excluding persons who have committed more serious crimes from this opportunity for reduced confinement is rationally related to the legitimate purpose of punishing more serious crimes more severely. A classification that treats persons differently, for purposes of participation in this program, based on whether their conduct has caused death or great bodily harm, is rationally related to the legitimate purpose of punishing more severely those persons who commit more serious crimes. It is rational to treat conduct that causes death or great bodily harm differently from

different legislation. However, as the State points out, Lynch does not discuss each of the five criteria in a clear and separate argument. In any event, in *Ferdon*, 284 Wis. 2d 573, ¶ 71 n.77, the court referred to the five-part test in a footnote as one of a number of different formulations of the rational basis test but did not employ it. Because *Ferdon* is the most recent supreme court opinion discussing the standard to be employed when using the rational basis test, we use *Ferdon's* formulation of that standard, not *Aicher's*. However, even if we employed the five-part test, our conclusion would be the same and our analysis would be essentially the same.

[6] Lynch does not contend that, if he cannot participate in the earned release program, he is denied all treatment for substance abuse.

64

conduct that does not have that result and to punish the former more severely.

¶ 19. In essence, Lynch is offering an alternative classification scheme for participation in the earned release program in which the harm caused by his conduct is ignored and substance abuse treatment is the program's sole purpose. While such a classification may well have a rational basis, that is not the standard. The pertinent inquiry is whether there is any rational basis for the classification the legislature chose, not whether there are other or better classifications the legislature might have chosen. *See Ferdon*, 284 Wis. 2d 573, ¶ 76.

¶ 20. In short, excluding persons whose conduct has caused death or great bodily harm from the opportunity to reduce their period of confinement by participation in the earned release program is rationally related to the legitimate government purpose of punishing more serious crimes more severely. Therefore, WIS. STAT. §§ 302.05(3)(a)1. and 973.01(3g) do not violate Lynch's right to equal protection by precluding his participation in that program.

■■

¶ 21. We turn next to Lynch's substantive due process challenge. Lynch asserts that excluding him from participating in the earned release program is an arbitrary act of government. Lynch acknowledges that, in the context of criminal penalties, his substantive due process argument is essentially the same as his equal protection argument. *See Chapman v. United States*, 500 U.S. 453, 464–65 (1991). Lynch does not explain how, if there is no equal protection violation under the rational basis standard, there can nonetheless be a substantive due process violation. We reject his substantive due process challenge for the same reasons we

have concluded the statutes do not violate his right to equal protection.

## II. Challenge to Accuracy of Information at Sentencing

¶ 22. Lynch contends that, in sentencing him, the circuit court erroneously relied on the television interview. According to Lynch, this violated his due process right to be sentenced on accurate information because he did not know the court was going to use that information at sentencing and he had no opportunity to present evidence that he did not choose the specific contents of the broadcasted interview or the timing of the interview or broadcast.

¶ 23. A defendant has a due process right to be sentenced based on accurate information. *State v. Tiepelman*, 2006 WI 66, ¶ 9, 291 Wis. 2d 179, 717 N.W.2d 1. When a defendant seeks resentencing because of allegedly inaccurate information, a defendant must establish that there was information before the sentencing court that was inaccurate and that the court actually relied on the inaccurate information, *id.*, ¶ 2; if a defendant does this, the burden then shifts to the State to show that the error was harmless. *Id.*, ¶ 26. Whether a defendant has been denied the due process right to be sentenced on accurate information is an issue that we review de novo. *Id.*, ¶ 9.

¶ 24. We address first Lynch's argument that the court had an obligation to give him advance notice that it was going to consider the television interview at sentencing.[7] The case he relies on, *Gardner v. Florida*,

---

[7] Under the heading of a due process challenge to inaccurate information, Lynch refers to the evidentiary rule regarding

430 U.S. 349 (1977), does not support his position. There the Supreme Court concluded that the sentencing court violated the defendant's right to due process when it decided to impose the death penalty based in part on a confidential portion of the presentence report that had not been disclosed to the defendant. *Id.* at 351. A defendant has the right to an opportunity to rebut information presented at sentencing. *See State v. Damaske,* 212 Wis. 2d 169, 196, 567 N.W.2d 905 (Ct. App. 1997). Obviously, if sentencing information is kept from the defendant, he or she cannot exercise this right. *See Gardner,* 430 U.S. at 360–61.

¶ 25. The facts of *Gardner* are not analogous to those here. The defendant in *Gardner* had no way of knowing what was in the confidential portion and, thus, no way to challenge its accuracy. *Id.* at 353. In this case, the contents of the interview were not kept secret from Lynch. Since Lynch gave the interview, he knew its contents and when it occurred. Lynch appears to suggest that he could not tell the court what he wanted to say about the interview, and could not ask for an opportunity to present information in rebuttal. This was so, according to Lynch, because the court first

judicial notice, Wis. Stat. § 902.01. We agree with the State that this rule is not applicable at sentencing. *See* Wis. Stat. § 911.01(4)(c) (Wis. Stat. chs. 901 to 911, with certain exceptions that do not include § 902.01, do not apply at sentencing). For the same reason, the cases he cites holding a fact finder may not find facts based on evidence outside the record are not applicable here. *See, e.g., State v. Peterson,* 222 Wis. 2d 449, 457–58, 588 N.W.2d 84 (Ct. App. 1998); *Solberg v. Robbins Lumber Co.,* 147 Wis. 259, 265, 133 N.W. 28 (1911); *State v. Sarnowski,* 2005 WI App 48, ¶ 16, 280 Wis. 2d 243, 694 N.W.2d 498.

referred to the interview during its discussion of the sentence, after Lynch was done speaking and presenting his witnesses and after his counsel was done arguing. However, nothing in the record suggests that the court would not have considered his objection or comments at that time. This is not like *Gardner*, where the policy was to not let the defendant see the confidential information. *Id.*

¶ 26. Lynch also contends that the combination of the court's lack of advance notice at sentencing and denial of the postconviction motion without an evidentiary hearing deprived him of the right to prove that the interview was edited and presented in ways beyond his control. However, Lynch's motion did not ask for an evidentiary hearing. In addition, his motion asserted only that he "did not control the questioning, photography or editing of the interview"; his motion did not assert specific facts showing that the broadcast was not an accurate representation of what he said. Thus, even if we overlook the fact that Lynch did not ask for an evidentiary hearing, the motion did not assert facts entitling him to an evidentiary hearing to show the contents of the interview were inaccurate. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (Ct. App. 1995) (circuit court must hold an evidentiary hearing if postconviction motion alleges specific facts that, if true, would entitle the defendant to relief).

¶ 27. At bottom, Lynch's objection appears to be that the court drew the inference of "self-serving" from the fact that the broadcast occurred shortly before his sentencing. Indeed, Lynch's arguments on his lack of control over the contents of the broadcast seem beside the point because the court's comments do not refer to the contents. As for the timing, Lynch does not contend

that the broadcast did not occur shortly before sentencing. Instead, the inaccurate information as to timing, he asserts, is the court's assumption that he had control over the timing; he argues that he is entitled to present evidence that he did not control whether television cameras would be at the particular presentation or when the broadcast would occur. However, Lynch's motion did not assert that the court relied on inaccurate information because it assumed he had control over the timing of the interview and broadcast; he did not raise this point until his reply brief on the motion. Thus, even overlooking the fact Lynch did not request an evidentiary hearing, the motion did not entitle him to an evidentiary hearing to present evidence to show the court's assumption about his control over the timing of the broadcast was inaccurate. Lynch's reference to this issue for the first time in his reply brief, again without mentioning an evidentiary hearing, did not sufficiently alert the circuit court to the fact that he wanted to present testimony on this issue. *See Bentley*, 210 Wis. 2d at 313–14. Therefore, it is not a grounds for reversing the circuit court. *See State v. Edwards*, 2003 WI App 221, ¶ 8, 267 Wis. 2d 491, 671 N.W.2d 371 (party must raise issue with sufficient prominence so that circuit court knows it is being called upon to rule on the issue).

¶ 28. We conclude that Lynch has not established that he was sentenced based on improper or inaccurate information and he has not shown that he was erroneously denied an evidentiary hearing at which to establish that.

*By the Court.*—Judgment and order affirmed.