STATE of Wisconsin,
Plaintiff-Respondent,

v.

James D. HEIDKE, Defendant-Appellant.†

Court of Appeals

*No. 2015AP1420–CR. Submitted on briefs May 3, 2016.
—Decided June 28, 2016.*

**2016 WI App 55**

(Also reported in 883 N.W.2d 870.)

†Petition for Review Filed

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Leon W. Todd,* assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J. James D. Heidke appeals the order emanating out of his conviction for violating Wis. Stat. § 948.075(1r) entered upon his guilty plea. The issue on appeal relates to the order denying his motion to dismiss the penalty enhancer found in Wis. Stat. § 939.617(1) (2013–14)[1] and denying his request to declare § 939.617(1) unconstitutional, which the trial court entered prior to Heidke's plea. The aforementioned penalty enhancer set a mandatory minimum sentence of five years for his conviction of using a computer to facilitate a child sex crime contrary to Wis. Stat. § 948.075(1r). Heidke argues that the penalty enhancer has no rational basis to a crime of computer facilitation because by contrast, a person convicted of the completed act of sexual assault with a child found in Wis. Stat. § 948.02 does not face a mandatory sentence of any kind. He also contends the penalty enhancer is unconstitutional as applied to him. We are satisfied that the legislature had reasonable and practical grounds for making the conviction for using a computer to facilitate a child sex crime subject to a mandatory minimum sentence. Thus, there was a rational basis for the penalty enhancer. The fact that a conviction for sexual assault of a child (§ 948.02), which has different elements than § 948.075(1r), has no mandatory sentence does not render the penalty

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

enhancer irrational. In addition, we find his argument that the statute is unconstitutional as applied to him unavailing. Consequently, the penalty enhancer was properly applied, and § 939.617(1) is constitutional. We affirm.

## FACTS

¶ 2. According to the complaint, on February 21, 2013, a Milwaukee police detective was working on the internet in an undercover capacity. He was purporting to be a fifteen-year-old boy named Patrick. The detective discovered an online posting, the heading of which read: "Older for younger for some fun - m4m - 48 (Milwaukee)." The posting read: "Near the east side, looking to play, I can host. Int [sic] anything mild to wild. Be young, hung and fun. Reply with age, race and stats, and tell me what your [sic] up for." Concerned that a minor would reply to such a post, the detective responded to the post writing: "hey sup sup . . .I'm Patrick[.] Just seeing what going on . . .saw your post and like it im [sic] 15 511 155 blue n black." The original reply to this post from "Jim" was that "Patrick" was too young. However, "Jim" then asked if "Patrick" had any pictures of himself. The detective then sent him a picture of a boy around the age of fifteen, and the conversation developed over the course of several days to the point where "Jim" invited "Patrick" over to his home to masturbate. "Jim" did inquire whether "Patrick" was a police officer. Several days, and many text messages later, photos of nude men were sent to "Patrick" from "Jim."

¶ 3. Ultimately, "Jim" agreed to pick up "Patrick" at a CVS store. "Jim" told "Patrick" he was driving a black Jetta. "Jim" emailed "Patrick" to tell him he was leaving his house to come pick him up.

When Heidke entered the parking lot of the store, he was arrested. Found in Heidke's car was an oral sex Lick-Suck-Blow-Kiss dice game, seventy-one packages of Viagra, and twenty-five tablets of a different erectile dysfunction medication. His home was also searched and the police discovered a room containing a harness and numerous contraptions to facilitate multiple sexual encounters. In the room, the police found a large box of condoms, dildos, a sex face mask, a leather paddle, a leather neck collar, a dog leash, restraints, and pornographic DVDs.

¶ 4. Several months after Heidke was charged with one count of use of a computer to facilitate a child sex crime, he filed a pre-trial motion asking the trial court to dismiss the penalty enhancer found in WIS. STAT. § 939.617(1) and to find this statute unconstitutional as it was irrational. Briefs were filed by the defense and the State. After the briefing was concluded, the trial court heard argument on the motion. Ultimately, the trial court denied the motion, finding that the defense had not met its burden to show beyond a reasonable doubt that the statute in question was unconstitutional. Heidke then waived his right to a jury trial. Later, he pled guilty. Prior to sentencing, Heidke filed a brief urging the court to permit Heidke to escape the prescribed mandatory minimum sentence of five years' confinement. The State opposed this request. The trial court sentenced Heidke to the minimum sentence of five years incarceration and two years on extended supervision. This appeal follows.

### ANALYSIS

■■■

¶ 5. The constitutionality of a statute is a question of law that this court reviews *de novo. State v.*

*Cole*, 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328. A statute enjoys a presumption of constitutionality. *See State v. Janssen*, 219 Wis. 2d 362, 370, 580 N.W.2d 260 (1998). To overcome that presumption, a party challenging a statute's constitutionality bears a heavy burden. *Cole*, 264 Wis. 2d 520, ¶ 11. It is insufficient for the party challenging the statute to merely establish either that the statute's constitutionality is doubtful or that the statute is probably unconstitutional. *Id.* Instead, the party challenging a statute's constitutionality must "prove that the statute is unconstitutional beyond a reasonable doubt." *Id.*

¶ 6. The right to equal protection under the law is guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 1 of the Wisconsin Constitution. *See* U.S. Const. amend XIV; Wis. Const. art. I, § 1. When a statute is challenged on equal protection grounds, the question is whether a rational basis exists for the classification, unless the statute impinges on a fundamental right or disadvantages a suspect class. *State v. Smith*, 2010 WI 16, ¶ 12, 323 Wis. 2d 377, 780 N.W. 2d 90. The equal protection clause "is designed to assure that those who are similarly situated will be treated similarly." *Treiber v. Knoll*, 135 Wis. 2d 58, 68, 398 N.W.2d 756 (1987). "The equal protection clause requires that the legislature have reasonable and practical grounds for the classifications that it draws," and when determining if there is a rational basis, we must presume that the legislative action is valid. *See State v. Quintana*, 2008 WI 33, ¶¶ 76, 79, 308 Wis. 2d 615, 748 N.W. 2d 447. Under this "rational basis" test, equal protection is violated if there is no plausible policy reason for the classification or the classification is arbitrary in rela-

tion to the legislative goal. *See State v. Lynch*, 2006 WI App 231, ¶ 13, 297 Wis. 2d 51, 724 N.W.2d 656. When a statutory scheme creates an arbitrary or irrational penalty structure, it denies citizens their right to equal protection under the law and should be struck down. *See State v. Asfoor*, 75 Wis. 2d 411, 440–41, 249 N.W.2d 529 (1977).

■

¶ 7. For his first claim, Heidke relies principally on *Asfoor* for his argument that the mandatory minimum penalty enhancer applied here is irrational. The facts in *Asfoor* are that Asfoor was convicted by a jury of two offenses: (1) as party of the crime of injury by negligent use of a weapon contrary to WIS. STAT. §§ 940.24(1) (1973–74) and 939.05 (1973–74); and (2) carrying a concealed weapon contrary to WIS. STAT. 941.23(1) (1973–74). *Asfoor*, 75 Wis. 2d at 423.

¶ 8. Among his many arguments, Asfoor contended that a conviction under WIS. STAT. § 940.24(1) (1973–74) "violate[d] the equal protection clause of the Fourteenth Amendment and the Eighth Amendment in that a conviction of injury by negligent use of a weapon is a felony while conviction of homicide by negligent use of a weapon, sec. 940.08, [1973–74], is a misdemeanor." *Asfoor*, 75 Wis. 2d at 437. Thus, he argued that these statutes violated the equal protection of the law because the only differences between these two statutes are that § 940.08(1) (1973–74) deals with homicide, whereas the other statute deals with injury. *Asfoor*, 75 Wis. 2d at 439–40. This set up a situation where one who caused the death of another human being by a high degree of negligence in the operation or handling of a firearm committed a misde-

meanor, while someone who simply caused bodily harm in the same manner committed a felony. *Id.* at 440.

¶ 9. In resolving the issue, our supreme court in *Asfoor* stated that: "We are unable to conceive of any reason to support the statutory discrimination of the legislature . . . . The irrationality of this classification results from the felony being imposed for causing injury and the misdemeanor for causing death." *Id.* The supreme court declared that only the penalty provision of Wis. Stat. § 940.24(1) (1973–74) was unconstitutional in that it denied equal protection of the law. *Asfoor*, 75 Wis. 2d at 441. The court explained that the penalty provision was severable. *Id.*

¶ 10. This is not an *Asfoor* situation. In *Asfoor*, the elements of the crime were identical except that the result of the criminal acts differ, making the result of bodily harm a felony, whereas the result of death was only a misdemeanor. *See id.* at 439–40. This was irrational. Here, there is no such problem.

¶ 11. The elements needed to convict a person of violating Wis. Stat. § 948.075 include the following:

1. The defendant used a computerized communication system to communicate with an individual.

2. The defendant believed or had reason to believe that the individual was under the age of 16 years.

3. The defendant used a computerized communication system to communicate with the individual with intent to have sexual (contact) (intercourse) with the individual.

4. The defendant did an act, in addition to using a computerized communication system, to carry out the intent to have sexual (contact) (intercourse).

Wis JI—Criminal 2135. Section 948.075 targets a specific and insidious way predators troll for their child victims on the internet. Wisconsin Stat. § 948.02 is the general statute prohibiting sexual contact or intercourse with children.

¶ 12. The trial court, in denying the motion to find the penalty enhancer unconstitutional, recited the legislative history of this penalty enhancer that supports the severity of the penalty. Originally, in 2006, the legislature passed a penalty enhancer that set a presumptive minimum sentence of five years for using a computer to facilitate a child sex crime. *See* 2005 A.B. 942; 2005 Wis. Act 433, § 15.22. This was done after evidence, found in a 2005 fiscal note, reflected that thirty-three convicted offenders of then-Wis. Stat. § 948.075(1r) were placed on probation while only four offenders of this statute were incarcerated for an average of thirty-three months. Fiscal Estimate, 2005 A.B. 942, Feb. 7, 2006. Three years later in 2009, a Milwaukee television station did a study that revealed that only one in three convictions for using a computer to facilitate a child sex crime resulted in the minimum sentence. Assembly Committee on Criminal Justice & Corrections, *Testimony on Assembly Bill 209* (Sept. 22, 2011). This prompted one of the legislators to testify that the law is not being enforced as it was intended. *Id.* This legislator then proposed legislation that modified the penalty enhancer to a mandatory minimum sentence of five years. *See* 2011 A.B. 209. The legislation became law. *See* 2011 Wis. Act 272. This testimony and the resulting legislation provides a rational basis for the mandatory minimum sentence.

¶ 13. Heidke also argues that the mandatory minimum sentence found in Wis. Stat. § 948.075(1r) is

irrational because the completed crime of sexual assault of a child contrary to Wis. Stat. § 948.02 carries no mandatory minimum sentence. We first observe that the State is not precluded from treating even similarly situated persons differently. *See State v. Smet*, 2005 WI App 263, ¶ 26, 288 Wis. 2d 525, 709 N.W.2d 474.

¶ 14. The State suggests that the perception that led to the mandatory minimum sentence in Wis. Stat. § 948.075(1r), that is, a perceived judicial lenience in imposing sentences for a crime the legislature deemed serious, did not exist with sentences for sexual assault of a child. To this end, the State provided a sampling of cases found on Westlaw for convictions for sexual assault of a child contrary to Wis. Stat. § 948.02 between the date § 948.075(1r) was enacted and the date the minimum mandatory sentence went into effect. In a couple of those cases, a sentence of probation was given. However, the longest sentence was forty years, and the shortest sentence out of this sampling where confinement was ordered was five years of confinement. If, indeed, the legislature was of such a mind, this provides a rational basis for a mandatory sentence for one crime but not another. *See United States v. Brucker*, 646 F.3d 1012, 1017–18 (7th Cir. 2011).

¶ 15. However, even without the comparison of sentences between convictions for violating Wis. Stat. §§ 948.075(1r) and 948.02, there are ample and valid reasons for the legislature to determine that the use of a computer to facilitate a child sex crime should be subject to a mandatory minimum sentence, while sexual assault of a child carries no mandatory sentence.

¶ 16. The use of a computer and the internet, by its nature, is a very private and discreet method to

coax a child into sexual activity. Offenders can anonymously contact and solicit sex from multiple children in the children's homes without knowledge of their parents. This can be effectuated by luring children away from the safety of their homes and families. It is also possible that a child induced to have sex will not report it to the authorities, and, even if reported, using a computer to communicate makes it less likely that an offender will be apprehended and punished. Finally, as the author of the bill making the sentence mandatory stated during his testimony on 2011 A.B. 209,

> Online sex offender activity continues to rise and additional children continue to be placed at risk.... Pedophiles use the same computer networks that our kids are using. They know where to look and they know what to say to entice innocent children.... Sending these convicts to prison for the intended length of sentence is the least we can do to keep children safe and relieve anxiety of parents.

Assembly Committee on Criminal Justice & Corrections, *Testimony on Assembly Bill 209* (Sept. 22, 2011). It is evident from these remarks that the legislature viewed the crime of use of a computer to facilitate a child sex crime as a dangerous and evil activity with devastating consequences when completed. The legislature believed strong measures should be taken to eliminate its use. The legislature's decision to more severely punish those that use a computer to facilitate a child sex crime has a rational basis, as it had a plausible policy reason behind it.

¶ 17. As noted, statutes are presumed to be constitutional. It is within the legislature's prerogative to decide which crimes are serious and to fashion an appropriate sentence. *State v. Wolske*, 143 Wis. 2d 175,

187, 420 N.W.2d 60 (Ct. App. 1988) ("The task of defining criminal conduct is entirely within the legislative domain, . . . and, within constitutional limitations, the legislature possesses the inherent power to prohibit and punish any act as a crime.") (internal citation omitted)). Heidke has the burden of eliminating any reasonably conceivable state of facts that could provide a rational basis for the classification. *See State v. Pocian*, 2012 WI App 58, 341 Wis. 2d 380, 814 N.W.2d 894. He has not done so.

¶ 18. Heidke's second claim challenges the penalty enhancer claiming it is unconstitutional as applied to him. Unlike a facial challenge to a statute that alleges the statute is unconstitutional on its face and thus is unconstitutional under all circumstances, an as-applied challenge is a claim that a statute is unconstitutional as it relates to the facts of a particular case or to a particular party. *Smith*, 323 Wis. 2d 377, ¶ 10 n. 9. In an as-applied challenge, the challenger must prove that the statute as applied to him or her is unconstitutional beyond a reasonable doubt. *Id.*, ¶ 9.

¶ 19. Heidke argues that the penalty enhancer is unconstitutional as applied to him. He argues that here there is no allegation that Heidke ever attempted to commit a first-degree child sexual assault and no real child existed. We disagree. First, had a real fifteen-year-old responded to Heidke's post, that child would have walked into a house designed for sophisticated and, some might argue, deviant sexual practices. Heidke, then age fifty-six, admitted to the police that he liked to "hook up" with younger guys. In addition, Heidke volunteered to the police that had "Patrick" been real, he would have "possibly engaged in mutual

oral sex." While this crime was never completed, Heidke's intentions were to engage in a child sex crime. The penalty enhancer was not unconstitutional as applied to him.

¶ 20. For the reasons stated, the trial court's decision is affirmed.

*By the Court.*—Judgment affirmed.